MISSOURI PAC. RY. CO. *v.* TEXAS PAC. RY. CO., (ANDREOLA, Inter-
venor.)

*(Circuit Court, E. D. Louisiana.  February 5, 1890.)*

1. IMPUTED NEGLIGENCE—DRIVER AND PASSENGER IN PUBLIC CARRIAGE.
   The negligence of the driver of a public carriage is not to be imputed to the pas-
   senger, who, in the management of the conveyance, exercises no control over the
   movements of the vehicle.  *Little* v. *Hackett*, 116 U. S. 366, 6 Sup. Ct. Rep. 391, fol-
   lowed.

2. DAMAGES—FOR PERSONAL INJURIES.
   In an action for damages for injuries caused by the collision of a railway train
   with a carriage occupied by intervenor's wife, it appeared that by reason of the
   accident her left shoulder was broken, causing her great pain for several weeks;
   that as a result the arm was practically paralyzed, and permanently disabled, and
   often painful; that she was a dress-maker by trade, and contributed largely to the
   support of the family; and that her ability to so contribute was impaired by her in-
   juries.  *Held*, that a verdict of $4,500 damages was not excessive.

In Equity.  On exceptions to the master's report.  Intervention of
Constantine Andreola.

*Rice & Armstrong*, for intervenor.

*F. H. Prendergast* and *Howe & Prentiss*, for defendant.

PARDEE, J.  On the 22d day of March, 1887, the intervenor's wife,
while occupying a public carriage, hired for the occasion, was injured
through a collision with said carriage and one of the trains operated by
the receivers in this cause, at a public crossing in the town of Marshall,
in the state of Texas.  On the 9th of August, 1887, the intervenor in-
stituted a suit in the district court of Harrison county, Tex., against
the receivers, to recover damages for such injuries.  The receivers ap-
peared, and demurred to the jurisdiction of the court, and at the same
time pleaded a general denial, and contributory negligence.  On the
trial of the case, in August, 1888, the jury returned a verdict as follows:
"We, the jury, find for the plaintiff actual damages, including all ex-
penses, to the total amount of four thousand five hundred dollars."  Upon
which verdict the court rendered the following judgment:

"It is therefore considered, ordered, and adjudged by the court that the
plaintiff do have and recover of the defendants, John C. Brown and Lionel A.
Sheldon, in their capacities as receivers of the Texas & Pacific Railway, the
sum of four thousand five hundred dollars, ($4,500.00,) the finding of the jury
aforesaid, together with all the costs of this suit; that this judgment be cer-
tified to the honorable circuit court of the United States for the eastern dis-
trict of Louisiana, at New Orleans, in which said court said receivers were
appointed, and under the orders of which said Brown is now, and has been,
operating said road, to be paid, under the orders of said court, out of the earn-
ings of said railroad; and it is further ordered, adjudged, and considered by
the court that this judgment shall be a lien upon the earnings of said road in
the hands of said receiver, arising from the operation of said road in Texas,
and on all machinery purchased by the receivers under said earnings, and on
the improvements and betterments placed upon said railway in Texas, out of
the earnings of said railway."

By intervention, the said judgment has been presented in this case, with a prayer to this court to recognize the same, and to render such orders and assistance as may be equitable, etc. The master reported in favor of intervenor, and to his report defendant has excepted. The questions presented as to the conclusiveness of the judgment presented are the same as those in the *Case of Sullivan, ante,* 311, (just decided;) and, for the reasons given in the opinion in that case, will be ruled the same way.

The evidence shows that the injury to the intervenor's wife was caused by the negligence of the servants and employes of the receivers, in that they started the train, near a public crossing, without giving any signal of such intention, and did so while a line of carriages was crossing the track; and further, in this, that while the train was standing thereby, ready to cross, an employe of the receivers gave notice to the carriage drivers that they could cross over in safety. There is some evidence to show that the driver of the carriage containing the intervenor's wife and others was also guilty of negligence in driving onto the track without sufficient care. For the purposes of this case, such negligence may be conceded, with the finding that it contributed to the injury resulting to the intervenor's wife. It is contended in the exceptions and in argument that such negligence on the part of the driver is to be imputed to the party injured, and that the intervenor cannot recover because of such contributory negligence; citing *Thorogood* v. *Bryan,* 8 C. B. 115; Whit. Smith, Neg. 405; Patt. Ry. Acc. Law, § 86; Beach, Contrib. Neg. §§ 34–36. On this point there are no decisions cited as to the jurisprudence of Texas. In *Little* v. *Hackett,* 116 U. S. 366, 6 Sup. Ct. Rep. 391, on a state of facts differing in no important particular from the facts of the present case, the supreme court of the United States, after reviewing the whole subject and the leading cases, disapproved the leading case of *Thorogood* v. *Bryan, supra,* and held that the negligence of the driver of a public carriage is not to be imputed to the passenger, who, in the management of the conveyance, exercises no control over the movements of the vehicle. This decision is conclusive of this case. It is clear, therefore, that the intervenor is entitled to recover from the receiver damages for the injuries his wife sustained by the collision aforesaid. Those injuries were severe. According to the testimony of the doctor who attended, "there was a fractured clavicle near the left shoulder joint," and there were bruises in her side, and she complained of great pain. She was under his treatment about three weeks, when she went to Shreveport. Two or three days after her accident she was examined by Dr. Clay, who found her suffering apparently great pain. The injury then appeared to be located on the front and lateral aspect of the chest, including the left shoulder joint and collar-bone; the collar-bone being evidently broken. At this time her suffering was so excruciating that it was impossible to make much examination. Afterwards, the first week in August, (probably 1888,) the same physician examined her again. She was suffering then from stiffness in the left shoulder, which had become atrophied from non-use. The use of this joint was markedly

deficient.   After her return to Shreveport, she was treated by Dr. D.
H. Billin, who saw her immediately after her return, about three weeks
after the accident.   She had a dressing on for a fractured clavicle, suf-
fered very much, and witness was compelled to give anodynes, to re-
lieve the pains complained of in her spine and shoulder.   On the trial,
eighteen months afterwards, he testified that she was in very good
health, and sound physically, prior to her injuries.   That she had suf-
fered with her arm more or less ever since the reception of the injury.
That the arm injured is practically paralyzed, and that she cannot close
some of the fingers on her hand, on account of the injury to nerves of
the arm.   She cannot raise the arm over the head without resistance and
pain.   That since her injuries she has suffered, and was then suffering,
from spinal irritation.   Her arm was much disabled, and interfered
much with her duties as housekeeper, and in her calling as dress-maker.
That her arm was wasted somewhat.   Whether it was the result of the
injury to the nerve direct, or due to usage, witness could not say.   In
his opinion, the injuries she received will disable her permanently.
Eighteen months after, Mrs. Andreola herself testified:

"I can use my thumb and fore-finger of the left hand, but can't use the
other fingers of the same hand.   I cannot raise my left arm to a level without
assistance.   It has no strength in it.   I could not lift even a saucer with my
left hand and arm.   My chief pain is now in my shoulder-blade, next to the
spinal column.   If I turn over on my left side in my sleep, I quickly awake,
and have to turn back, on account of pain.   In cold weather, the broken
shoulder pains me a great deal, as if it had neuralgia.   Since the injury, I
have not had any health,—suffering from nervousness,—and am going down
all the time.   I cannot now, by reason of my injuries, cut and fit, and carry
on my business.   I cannot attend to my household affairs at all.   I am forty
years of age, and have four children living with me at home.   I cannot do
anything now, except what I can do with one arm.   The pain between my
shoulder-blades, near the spinal column, hurts me, and makes it painful for
me to breathe.   I was not able to resume my dress-making business until a
year after the accident.   I have had to get an extra hand in my business, at
twenty dollars a month.   My husband is a poor man, and could not support
us without my assistance."

This evidence with regard to Mrs. Andreola's injuries is practically
undisputed.   It is a fair inference, from the whole of the testimony,
that the intervenor's wife was the chief bread-winner of the family, and
that by the injury received in the collision she has been permanently
crippled.   She has suffered, and will suffer, much pain; and her capac-
ity to aid in supporting her family is very seriously impaired.   The
amount of damages allowed by the jury, and recommended on this in-
tervention by the master, is $4,500.   It does not appear to be excessive.
  The following order will be entered in the case:   This cause came on
to be further heard upon the intervention of Constantine Andreola, the
master's report thereon, and exceptions thereto, and was argued, where-
upon it is ordered, adjudged, and decreed that the intervenor, Constan-
tine Andreola, do have and recover from the receiver in this cause the
sum of $4,500, with interest at 8 per cent. per annum from the 30th of

January, 1889, and the costs of this intervention. It is further ordered, adjudged, and decreed that the defendant, the Texas & Pacific Railway Company, do pay and satisfy the said judgment under the order heretofore entered in this cause, restoring the possession of the railway property.