McCAFFREY v. PRESIDENT, ETC., OF THE DELAWARE & H. CANAL CO.

*(Supreme Court, General Term, Third Department.* November 30, 1891.)

1. RAILROAD COMPANIES—ACCIDENTS AT STREET CROSSINGS—RINGING BELL.
   A railroad company, whose train, composed of an engine, tender, and car, the car in front, and the engine backing, with other cars behind, is not, when approaching a grade street crossing, unprotected by gates, at a speed of four miles an hour, necessarily absolved from the duty of taking other precautions against accidents at the crossing than the mere ringing of the engine bell.

2. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
   Plaintiff, a young woman, while driving on a Sunday afternoon, by invitation, with her sister, and seated on the back seat of a two-seated carriage, the driver in front and partly obscuring her view, approached defendant's grade street crossing, and was injured by collision with defendant's train, consisting of an engine and cars, moving backwards towards the crossing. There were gates at the crossing, but they were not in operation on Sundays, a fact not appearing to be known to plaintiff, and there was no flagman there. *Held,* that the question of contributory negligence on the part of plaintiff in failing to keep a lookout for an approaching train, in order to apprise the driver of danger, was properly submitted to the jury, and that their verdict for plaintiff should not be disturbed.

**8. SAME—CONTRIBUTORY NEGLIGENCE OF SERVANT—INJURY TO INVITED COMPANION.**
A person riding by invitation in a carriage, and injured by collision with a railroad engine and cars at a street crossing by reason of the negligence of those operating the engine and cars, may recover against the railroad company, notwithstanding the contributory negligence of the driver of the carriage, a servant, whose negligence cannot be imputed to the guest.

Appeal from circuit court, Rensselaer county. Affirmed.

Action by Frances McCaffrey against the president, managers, and company of the Delaware & Hudson Canal Company. From a judgment for plaintiff, defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Edwin Young,* for appellant. *Warren, Patterson & Gambell, (Charles E. Patterson,* of counsel,) for respondent.

LEARNED, P. J. This is an appeal by the defendant from a judgment on a verdict and from an order denying the motion for a new trial. The plaintiff was an unmarried woman, who had been for some months residing with her sister, Mrs. Bloss, at Troy. On Sunday, October 23, 1886, she was taking a drive with her sister in a two-seated carriage. The two seats faced in the same direction. She and her sister were on the back seat, the plaintiff on the right; the coachman on the front seat, in the middle or a little to the right. The two seats were very close together. The sides of the carriage were all open. The coachman was Mr. Bloss' driver. Mrs. Bloss had her son, a little boy, with her. The party were returning home about 5 P. M., and were driving down North Second street, southward; the street being now called "Fifth Avenue." Tracks of the Union Railroad Company cross the street on grade. This company does not run cars, but maintains the tracks and rails. It is owned by three companies, one of them the defendant, and its tracks are used by them. In going eastward from River street, the railroad tracks diverge, the tracks of the Fitchburg Railroad turning to the north, and those of the Union Railroad towards the south; so that where these two systems of tracks cross North Second street there is a distance between them of about 80 feet, the Fitchburg being the more northerly. At the crossing of the Union Railroad Company there were gates maintained by that company which were closed for the passing of trains. Prior to this time the gates had not been operated on Sundays, and they were not operated the day of the accident. There was no flagman at the crossing at that time. The driver knew that the gates were not operated on Sundays, and that there was no flagman, and he was familiar with the crossing. There was a house called the "Sutherland House" on the east side of the street, next to and near the railroad track. There was also a flagman's shanty at the crossing. As the plaintiff in the carriage approached the track, a train of cars of the defendant was moving westward towards the crossing. This train was made up as follows: In advance was a box-car; then came the locomotive, which was backing; and then two or three other cars. It was moving about four miles an hour. There was no man on the box-car. No whistle was blown. Whether a bell was rung or not is disputed. The train made so little noise that one witness, who was walking in North Second street, southward, at the time, testifies that she had one foot upon the track before she was aware of the approaching train. As the carriage approached the crossing the plaintiff looked at the gates, and saw they were up. She heard no bell. Mrs. Bloss also looked, and saw the gates were up, and heard no bell. About this time the plaintiff, who had had the child in her lap, handed him to his mother, and turned to speak to him, and at that instant the carriage was struck by the train. She was thrown out, and very severely and permanently injured. The driver was driving at a jog trot. He heard nothing. His horses seemed to have shied westward, probably alarmed by the near approach of the train; and

they turned so far westward that, according to the testimony of the driver, the train struck the carriage on the back.

It does not seem to be urged in this case that there was not sufficient evidence to go to the jury on the question of defendant's negligence.   There was a dispute whether the bell was rung; and, even if it had been, still the cab of the locomotive, the tender, and the box-car all intervened between the bell and the crossing; and it might be found by the jury that at such a crossing, and with such a train, the defendant had not discharged, its whole duty when it simply rang the bell.   But the defendant urges in regard to the plaintiff two things:  *First*, that she herself was negligent in failing to look out for the approaching train; *second*, that the driver was negligent, and that his negligence is hers on the doctrine of imputation.

First, was the plaintiff herself negligent?   The duty of one who is not driving at the time a carriage approaches the crossing is well stated in *Hoag* v. *Railroad Co.*, 111 N. Y. 199, 18 N. E. Rep. 648.   Such a person is bound to look and listen, and is not to omit some reasonable and prudent effort to see that the crossing is safe.   But what is such a person to do when he has looked?   As said in that case, he is not bound to jump, and is not bound to seize the reins.   Either of these acts would be dangerous. "The degree of care to be exercised varies with circumstances and emergencies."   If such a person is silent, it does not follow, as a matter of law, that he is negligent.   Applying these thoughts to this case, what can we say that the plaintiff ought to have done, as a matter of law?   Certainly not jump or seize the reins.   The defendant says that she should have apprised the driver of the danger.   But the driver was in a far better position to see any danger.   Why should she tell him what he could see for himself?   He was not her servant, and she had no right to control him.   If the danger was as apparent to him as to her, what good to tell him of it?   He had a much more unobstructed view than she had.   She was behind him, and the seats were very near together.   He was in the middle, or near the middle, of the front seat, thus obstructing her view.   The plaintiff saw the gates open.   True, she had been over this same crossing on Sundays before.   But it does not appear that she knew that the gates were never lowered on Sundays.   Of course, when she had crossed they were open.   She had on previous occasions seen them raised and lowered.   *Palmer* v. *Railroad Co.*, 112 N. Y. 234, 19 N. E. Rep. 678.   Now, all these facts were submitted to the jury to decide whether the plaintiff was negligent.   The learned justice charged that, if negligent, she could not recover; and the jury found that she was not.   The circumstances differ widely from those in *Brickell* v. *Railroad Co.*, 120 N. Y. 293, 24 N. E. Rep. 449.   There the plaintiff, a man, had hired a driver of a buggy wagon to carry him a short distance.   The top of the buggy was raised and closed except the front.   The plaintiff and the driver sat side by side.   It was snowing.   The plaintiff had the same knowledge of the road with the driver, and the same or a better opportunity of discovering danger.   The facts showed plain negligence on plaintiff's part, which he attempted to excuse on account of the wind and snow.   As the driver was busy driving, and as the snow tended to obscure the vision of both, it became specially the duty of the plaintiff to be on the lookout in approaching a crossing.   It has been often said that the question of contributory negligence is nearly always one for the jury.   It is especially so in a case like this, where it is quite doubtful whether any watchfulness on plaintiff's part would have enabled her to interfere with the driver without causing an evil fully as great as that which happened.   We think that this question was properly submitted to the jury.

The next question is whether the driver was negligent, and, if so, whether that negligence prevents a recovery.   We will assume that there was sufficient evidence from which the jury might have found him negligent.   Upon

what principle can the negligence of one person prevent another from recovering for injuries caused by the negligence of a third? Only when the relation of master and servant, as principal and agent, exists, so that the act of the servant or agent may be called the act of the principal or master. *Robinson* v. *Railroad Co.*, 66 N. Y. 11. We may also add (according to the law in some states) the case where a child is injured through the contributory negligence of a parent. But this plaintiff is not within either of these classes. There is nothing to connect her, in the way of responsibility, with the acts of the driver. If he had injured a person by his careless driving, it would not have been her fault. She was only an invited passenger in the carriage. She was a visitor at the house of Dr. Bloss. She was not the owner of the carriage or of the horses, and was not the master of the driver. *Dyer* v. *Railroad Co.*, 71 N. Y. 228. We see no error in the trial of the case, and are of opinion that the judgment and order should be affirmed, with costs.

All concur.