PETER RANDOLPH *vs.* PATRICK O'RIORDON & another.
AMELIA RANDOLPH *vs.* SAME.

Suffolk.   November 12, 1891. — January 7, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Collision of Vehicles — Negligence — Contributory Negligence — Law of the Road — Misconduct of Juror — Waiver.*

If a person hires a hackney carriage from its owner for conveyance to and from a certain place, and gives no directions to the driver furnished by such owner and assumes no control over him, and is injured by a collision with another vehicle through the negligence of such driver, it is no defence to the owner of the other vehicle, in an action brought against both owners to recover for such injuries, that the negligence of the owner of the hackney carriage contributed to the accident.

In an action for personal injuries resulting from a collision with a vehicle being driven upon the wrong side of the highway in violation of the law of the road, instructions to the jury are correct, that it is a question of fact whether under all the circumstances the driver's being there is negligence; that the fact that he was upon the wrong side of the way was evidence tending to show that he was in fault, but was not conclusive; and that it was a question upon all the evidence whether or not his being upon the wrong side of the way was negligent, that being a circumstance.

If the fact that a juror at a trial takes notes of the evidence and carries them into the jury-room affords a defendant a valid ground of complaint, it is disposed of by a finding of the presiding judge that it had been waived by the defendant.

TWO ACTIONS OF TORT, brought by a husband and wife, respectively, against Patrick O'Riordon and John Bryant, for personal injuries occasioned to the plaintiffs from a collision between vehicles belonging to the defendants.   Writs dated August 28, 1889.   The cases were tried together in the Superior Court, before *Thompson*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiffs offered evidence that Mr. Randolph hired the defendant Bryant to superintend the funeral of their grandchild on November 29, 1884, Bryant to furnish the carriages and drivers therefor; that the hack in which the plaintiffs rode was furnished by Bryant under his agreement, together with the driver, whose name was Hewton, and who had been in Bryant's employ for some time as a driver; that as they were return-

ing from the cemetery to Charlestown, where they lived, and were passing along Austin Street, a public highway, the hack came into collision with a heavy wagon belonging to the defendant O'Riordon, driven by a man in his employ, and both the plaintiffs were injured; that at the time the accident occurred Hewton was driving at the rate of from eight to ten miles an hour on the right-hand side of the middle of the travelled part of the street, and the defendant O'Riordon's team was being driven in the opposite direction at a walk on the driver's left of the middle of the travelled part of the street, but this was not the only negligence of the defendant O'Riordon; and that the total width of the hack was six feet, and there was at least ten feet of clear space of paved way to the right of the hack at the point where the collision occurred, and there was ample room for Hewton to have driven his hack either to the right or the left of the approaching team without coming into collision therewith.

The defendant O'Riordon requested the judge to instruct the jury as follows: —

1. " The negligence of the driver of the hack in which the plaintiffs were riding was the negligence of the plaintiffs; and if it contributed to the injury, the plaintiffs cannot recover against defendant O'Riordon."

2. " If the negligence of the defendant Bryant's driver was the proximate cause of the injury, the plaintiffs cannot recover of the defendant O'Riordon, although the negligence of O'Riordon's driver contributed to the injury, and although such injury would not have happened without such negligence of O'Riordon's driver."

3. " If between the negligent act of O'Riordon's driver and the injury to the plaintiffs there intervened the negligent act of the driver of Bryant's carriage, and such intervening act was the proximate cause of the injury, the defendant O'Riordon is not liable."

4. " The defendant O'Riordon is liable only for the natural and probable results of his driver's negligence; and if the negligent act of Bryant's driver was not, and ought not to have been, anticipated by O'Riordon's driver, and directly produced the damage, then O'Riordon is not liable, even though the collision would not have occurred unless O'Riordon's driver was negligent."

5. " The defendant O'Riordon had a right to drive his team upon the left of the middle of the travelled part of the road, and the fact of his team being there is not of itself evidence of negligence."

6. " This action, not being commenced within one year from the date of the collision declared on, cannot be maintained."

The judge refused to give the above instructions, but instructed the jury as follows:

" You have had your attention called to the position of O'Riordon's wagon upon the road. Before you can pass intelligently or fairly upon the question as to the effect of his position, you must ascertain and determine where his wagon actually was; because, until you ascertain that fact, you will not be able to determine as to the effect of his position upon the road. The law of the road, as it is termed, has been called to your attention, which I will read: ' When persons meet each other on a bridge or road, travelling with carriages, wagons, carts, sleds, sleighs, or other vehicles, each person shall seasonably drive his carriage or other vehicle to the right of the middle of the travelled part of such bridge or road, so that their respective carriages or other vehicles may pass each other without interference.' * It does not follow, that, because a party is upon the left-hand side of a way, that therefore the party is guilty of negligence, — is careless. A person may be answerable to the statute, and still not be guilty of negligence and carelessness in being in a position that the statute directs he shall not be in; but it is a question of fact, under all these circumstances, whether his being in that position was negligence or carelessness. The fact that he is upon the wrong side of the way is evidence upon that question, tending to show that he is in fault, but it is not conclusive; and the question, where there are other facts than the mere fact of his being upon the wrong side of the way, is a question, upon all the evidence, whether or not the party so upon the wrong side of the way is negligent. It might be carelessness to other parties for him to be upon the right side of the way; there may be contingencies such as that; but the person is to exercise ordinary care, and is held answerable in law for his negligence and

---

* Pub. Sts. c. 93, § 1.

carelessness, and the jury are to consider the law of the road in connection with the testimony bearing upon that question; so that if you find that O'Riordon's driver is not guilty of negligence that caused the injury, then O'Riordon is not to be held responsible. In order to hold him responsible, it must be shown that he was guilty of negligence in the driving of the team, and that the injury was the natural, probable, and proximate result of that carelessness. And if it was, then he may be held responsible. It is not necessary, to make the defendants jointly liable, that the defendants should have jointly participated in each particular act of carelessness that caused the injury. It is not necessary that the driver of the hack should have participated in the carelessness of the driver of the wagon, or that the driver of the wagon should have participated in the careless act of the driver of the hack; but if the combined careless acts of the defendants produced the collision, which was the natural, probable, and proximate result of the carelessness of each of the defendants, then they may be jointly held answerable for the result of such carelessness. If the natural and probable result of O'Riordon's carelessness was to produce the collision, and the natural and probable result of the carelessness of Bryant was to produce the collision, which caused the injury, then the careless act of each may be said to be the natural, probable, and proximate cause of the injury; and if such individual carelessness combined caused the collision, produced the injury, then they may have jointly caused the injury, and may be jointly or severally liable for the injury. But if the collision was not the natural, probable, and proximate result of the carelessness of O'Riordon, then he cannot be held responsible; and if it was not the natural, probable, and proximate result of the carelessness of Bryant, then Bryant cannot be held responsible. If the collision was the natural and probable result of the carelessness of both of the defendants, then they may be held to answer jointly; if of neither of them, then the verdict must be rendered for both defendants. If it was the natural and probable result of the carelessness of the one, and not of the carelessness of the other defendant, then that defendant may be held responsible whose careless act caused the collision, provided it was the natural and probable and proximate result of such carelessness. So

you will see, if neither was careless, the verdict is to be for both defendants; if both were guilty of negligence, which caused the injury, then the verdict is to be against both defendants; if one of them was guilty of negligence that caused the injury, and the other was not, then the verdict is to be against the one whose negligence caused the injury, and the jury will find for the other defendant."

The jury returned a verdict for the plaintiffs against the defendant O'Riordon, and for the defendant Bryant; and the defendant O'Riordon excepted.

After verdict, the defendant O'Riordon moved to set aside the verdict and that a new trial be granted, for the alleged misconduct of the foreman of the jury; and it appeared upon the hearing of this motion that the foreman of the jury had a small memorandum-book and a lead pencil, and made some minutes of the evidence during the examination of the witnesses in the presence of all the counsel, and no objection was made to it. The foreman had this book in his pocket when he retired with the jury to consider the case.

The counsel for the defendant O'Riordon asked the judge to rule that this conduct of the foreman was improper, and was such misconduct as would vitiate the verdict. The judge declined so to rule, and found as a fact that, if such conduct was improper, the defendant's right to take advantage of it had been waived, and overruled the motion for a new trial; and the defendant O'Riordon alleged exceptions.

*H. W. Bragg,* for the defendant O'Riordon.

*W. S. Slocum,* ( *C. H. Crosby* with him,) for the plaintiffs.

MORTON, J. The presiding judge instructed the jury, in substance, among other things, that they might find one or both of the defendants liable; that in order to find either liable they must find that there was carelessness on the part of his driver, which was the natural, probable, and proximate cause of the accident; and that if the accident was due to the carelessness of both drivers, then both defendants were liable. He also instructed them, that if one driver was careless, and his carelessness was the natural, probable, and proximate cause of the accident, and the other driver was not careless, then they should return a verdict against the defendant who was master of the

careless driver, and for the defendant whose driver was not careless. The jury rendered a verdict against the defendant O'Riordon, and for the defendant Bryant. The defendant O'Riordon now contends that the jury should have been instructed also as he requested ; namely, that if the carelessness of Bryant's driver contributed to the accident, he (O'Riordon) was not liable, whether it was or was not the proximate cause of the accident. This claim rests on the position that the negligence, if any, of the driver was to be imputed to the plaintiffs, and that again on the position that the relation of servant and master existed between him and them. If the plaintiffs and the driver of Bryant's hack had been total strangers to each other, it is obvious that it would have been no defence for O'Riordon to say that the negligence of Bryant's driver contributed to the accident. That defence could not be availed of by him unless there was some relation between the plaintiffs and the driver which would make them responsible for or identified with his acts; and in the present case that relation, if it existed at all, must have been the relation of master and servant.

The facts were that the defendant Bryant was hired by the plaintiff, Peter Randolph, to superintend the funeral of his grandchild, Bryant to furnish the carriages and drivers. Bryant furnished a hack, and a driver named Hewton, who had been in his employ for some time as his hackman. While the plaintiffs were returning from the funeral, Hewton driving, the accident occurred. No directions appear to have been given by the plaintiffs to, or control assumed over Hewton. We think, upon these facts, that the relation of master and servant did not exist between the plaintiffs and Hewton. What Bryant really agreed with the plaintiffs to do was to transport them to and from a certain place or places. For that purpose he sent his hack and his driver. The hack was in his control, through his agent or driver, all the time. It was the same as if Bryant himself were driving, and managing and controlling the team ; and it would be contrary to common experience to say that Bryant would have been, or that Hewton was, the servant of the plaintiffs, or that they were Hewton's master or would have been Bryant's master. Whether the hack and driver were hired at a public stand or of a private person could make no difference, nor

whether the party furnishing them was engaged in the business of a common carrier of passengers or not. It would not do to say that one who buys a passage from New York to Liverpool sustains the relation of master to the officers and crew and owners of the steamer on which he embarks. No more would it do to say that one who buys conveyance for his own person or his family from one place to another within the same city, or to an adjoining city, thereby assumes towards the driver of the hack, which the party who agrees to convey him furnishes, the relation of a master to a servant, or liability for his acts uncommanded and uninterfered with by him. The defendant O'Riordon relies upon *Thorogood* v. *Bryan*, 8 C. B. 115. It is enough perhaps to say of that case that it has been expressly overruled and disaffirmed in England, and has not been followed by the Supreme Court of the United States, and the courts of last resort in many different States. It "rests upon indefensible ground," says the Supreme Court of the United States. *Little* v. *Hackett*, 116 U. S. 366, 375. *Mills* v. *Armstrong*, 13 App. Cas. 1. *The Bernina*, 12 P. D. 58. *State* v. *Boston & Maine Railroad*, 80 Maine, 430. *Chapman* v. *New Haven Railroad*, 19 N. Y. 341. *Dyer* v. *Erie Railway*, 71 N. Y. 228. *Bennett* v. *New York Railroad*, 7 Vroom, 225. *New York, Lake Erie, & Western Railroad* v. *Steinbrenner*, 18 Vroom, 161. *Transfer Co.* v. *Kelly*, 36 Ohio St. 86. *Wabash, St. Louis, & Pacific Railway* v. *Shacklet*, 105 Ill. 364. *Tompkins* v. *Clay Street Railroad*, 66 Cal. 163. *Cuddy* v. *Horn*, 46 Mich. 596. *Danville, Lancaster, & Nicholasville Turnpike* v. *Stewart*, 2 Met. (Ky.) 119. *Louisville, Cincinnati, & Lexington Railroad* v. *Case*, 9 Bush, (Ky.) 728.

In the case of *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77, 79, it did not appear how the plaintiff and Haskell came to be riding together, and the court held, and rightly so, that "if the plaintiff failed to use the care which prudence required, relying upon the vigilance of his companion, he must prove that Haskell was in the exercise of due care, not only in the management of his horse, but in using the necessary precautions to guard against danger from passing trains." This was very different from saying that Haskell's negligence was to be imputed to the plaintiff, if he had been a passenger in a hack of which Haskell was the driver. It was merely saying that if, in a dangerous place, one

person trusted another person to look out for him, he must show that such person used due care. We think, therefore, that the instructions requested were rightly refused.

The defendant O'Riordon objects, in the next place, to the instruction that the fact of his team being on the left of the middle of the travelled part of the road was evidence of negligence. The court in substance instructed the jury that it was a question of fact whether under all the circumstances his being in that position was negligence; that the fact that he was upon the wrong side of the way was evidence tending to show that he was in fault, but was not conclusive; and that it was a question upon all the evidence whether or not the party upon the wrong side of the way was negligent, that being a circumstance. These instructions conformed to the law as heretofore laid down by this court, and were correct. *Jones* v. *Andover*, 10 Allen, 18. *Steele* v. *Burkhardt*, 104 Mass. 59. *Damon* v. *Scituate*, 119 Mass. 66.

If the fact that one of the jurors took notes of the evidence, which he carried into the jury-room with him, were valid ground of complaint, it was disposed of by the finding of the court that it had been waived by the defendant O'Riordon.

The request as to the time within which the action should have been brought has not been argued, and we therefore treat it as waived.        *Exceptions overruled.*