BRICKER v. GREEN.

1. DEATH—NEGLIGENCE—IMPUTED NEGLIGENCE.

In action under death act as amended, brought on behalf of the minor children of decedent, a married woman, whose husband was driving car in which she was riding, his negligence, if any, not being imputable to her, is of no consequence in determining admissibility of evidence showing he was permanently disabled by reason of the same tort that caused death of his wife and in determining whether action failed for want of a person suffering pecuniary loss upon his relinquishment of claim for damages (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

2. SAME—DAMAGES—DECEASED WAGE-EARNING MOTHER—FATHER PERMANENTLY DISABLED IN SAME ACCIDENT.

On the assumption that southbound defendant motorist was negligent as held by trial judge, it was proper to present testimony for consideration of jury, in action under amended death act brought for benefit of wage-earning married woman's minor children, that her husband who was driving westward was permanently disabled and incapacitated by reason of the same tort that caused his wife's death, as such testimony was relevant to whether or not the children suffered pecuniary loss (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

3. SAME—NEGLIGENCE IMPUTED TO DECEDENT—RECOVERY UNDER DEATH ACT.

Where deceased is one to whom negligence may be imputed, no recovery may be had by decedent's administrator under the death act (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

4. SAME—AMENDMENT OF DEATH ACT—MINORS.

The death act, as presently amended, is at least as broad in protecting minor children of a decedent as the original act (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

---

Contributory negligence of third person, imputed negligence, see 2 Restatement, Torts, p. 1266 *et seq.*, topic 4; plaintiff is not barred from recovering by negligent act or omission of third person unless relationship is such that plaintiff would be liable as a defendant for harm caused to others by such negligent conduct of the third person, § 485; contributory negligence of husband does not bar recovery by wife, § 487; guest in a vehicle is not barred from recovery for harm resulting from negligence of third person by contributory negligence of his host, § 490.

5. SAME—DAMAGES.

In order that recovery may be had under the death act, the administrator must show that some person has suffered some pecuniary injury by the death and the damages recoverable are limited to those sustained by the parties legally entitled to support from the decedent (3 Comp. Laws 1929, § 14061 *et seq.*, as amended by Act No. 297, Pub. Acts 1939).

6. SAME—DAMAGES—DISTRIBUTION BY PROBATE JUDGE.

Under the death act as presently amended, the distribution of the damages awarded is determined by the probate judge (3 Comp. Laws 1929, § 14062, as amended by Act No. 297, Pub. Acts 1939).

7. SAME—MARRIED WOMAN—MINOR CHILDREN—DAMAGES—EVIDENCE.

In action under amended death act by the administrator of the estate of a wage-earning married woman who was survived by 10 minor children and a husband who was rendered permanently disabled and incapacitated in the accident resulting in her death but who renounced his claim for damages as a statutory beneficiary under the death act, evidence clearly showed her minor children suffered pecuniary loss by reason of her death (3 Comp. Laws 1929, § 14062, as amended by Act No. 297, Pub. Acts 1939).

8. NEGLIGENCE—IMPUTED NEGLIGENCE DOCTRINE—EXCEPTIONS.

The imputed negligence doctrine has not been applied in this State so as to preclude recovery by minors, city firemen, or by occupants of public or private carriers for hire.

9. COURTS—STARE DECISIS.

The doctrine of *stare decisis* should apply with all its vigor wherever the rule of property, contract, or trade has become settled and, in the course of time, has been acted upon, whether the decree results from a judicial interpretation of the unwritten law, a statute, or the Constitution, although the court may properly announce that time for change has arrived and the legislature may act accordingly, but where prior decisions do not relate to titles, or establish rules of trade, property, or contract, or support public institutions and a court concludes that its earlier views were inherently wrong or have become inapplicable through lapse of time or change of condition, it should not hesitate thus to hold.

10. AUTOMOBILES—RULE OF IMPUTED NEGLIGENCE AS TO ADULT PASSENGERS OVERRULED.

Negligence of driver of car in which adult decedent was a passenger will not be imputed to decedent so as to preclude re-

covery from negligent defendant motorist partly causing decedent's fatal injuries, the rule of imputed negligence as announced and applied in *Lake Shore & Michigan Southern Railroad Co.* v. *Miller*, 25 Mich. 274, and in subsequent cases of like character being overruled so far as pending and future cases are concerned.

11. Same—Imputed Negligence—Contributory Negligence of Passenger.

Fact that, in action against a negligent defendant, the negligence of the driver of the car in which plaintiff passenger had been riding will not be imputed to the passenger would not preclude defense of contributory negligence of passenger if, relative to the cause of the accident, the passenger failed to exercise such reasonable care and caution as he should have exercised under the circumstances.

12. Appeal and Error—Costs—Overruled Decision.

Where case was decided by trial court pursuant to long-standing precedent, such precedent is expressly overruled and case reversed and remanded for further proceedings, costs of appeal abide final decision of the case.

Appeal from St. Clair; Stewart (Shirley), J. Submitted June 5, 1945. (Docket No. 1, Calendar No. 42,989.) Decided January 7, 1946.

Case by Raymond Bradshaw, administrator of the estate of Beatrice Bradshaw, deceased, against Alger Green, administrator of the estate of Loren Green, deceased, for damages under death act. Directed verdict and judgment for defendant. Plaintiff appeals. Ira Bricker, administrator *de bonis non* of the estate of Beatrice Bradshaw, deceased, substituted as party plaintiff. Reversed and new trial granted.

*Said M. Touma* (*Eugene F. Black* and *Miles K. Benedict,* of counsel), for plaintiff.

*Walsh, Walsh, O'Sullivan & Schlee,* for defendant.

*Amici curiae:*

State Bar of Michigan, by *Joseph W. Planck,
Frank H. Boos,* and *Rowe A. Balmer.*

Wolverine Insurance Company and Citizens Mutual Automobile Insurance Company, by *Dean W.
Kelley* and *Russell A. Searl.*

Dearborn Bar Association.
Down River Bar Association.
Hamtràmck Bar Association.
National Lawyers Guild, Detroit Chapter.
Wolverine Bar Association.
Women Lawyer's Association of Michigan.

BUSHNELL, J.   This action arose out of an automobile collision at the intersection of Sparling road and Goodells road west of the city of Port Huron. Sparling road east of the intersection is a black-top highway 20 feet wide, and west thereof is a gravel road 22 feet wide.   Goodells road north of the intersection is also a black-top highway 20 feet in width, and south of the intersection is a gravel road 22 feet wide.   These highways, neither of which was favored over the other, are comparatively level as each approaches the intersection, and traffic was controlled by signs marked "Slow" and "Turn."   On August 31, 1943, the day of the accident, the weather was clear and pavements were dry.

Raymond Bradshaw and his wife, Beatrice, who lived just west of the village of Goodells, which is about 12 to 14 miles from Port Huron, at about 5 o'clock, p.m., were returning from the Auto-Lite plant in Port Huron, where they were both employed.   Bradshaw was driving and his wife occupied the front seat of the car with him; a Mrs. Auch was in the rear seat.   Both Mrs. Bradshaw and Mrs Auch were asleep at the time of the accident.   Ordi-

narily, Bradshaw would have turned north at the intersection toward his home at Goodells. Mrs. Auch lived west of the intersection about one and a half miles, and Bradshaw was proceeding across the intersection for the purpose of taking Mrs. Auch to her home.

At the same time a car, driven by Loren Green, was approaching the intersection from the north. Green and his friend, Bernard Masters, both unmarried young men, had met at Goodells a short time before and both lived southwest of the intersection. Masters was the first to leave Goodells and, as he was approaching the intersection, Green drove around him at a high rate of speed and struck the center of the west-bound Bradshaw car, which was thrown sideways in a southerly direction about 85 feet. The Green car followed in the same direction about 75 feet. Mrs. Bradshaw and Mrs. Auch were instantly killed and Green died a few minutes thereafter.

Bradshaw testified that as he approached the intersection he made observations to the north and south without seeing any approaching traffic, and that when he looked back to the north he saw something coming that looked like a "black streak" about 90 to 100 feet away. He does not know what happened thereafter. All that he remembers is that he had his left foot on the clutch and his right was touching the brake. He had been driving a car for a number of years and was well acquainted with the locality. For several days prior to the accident, because his own car was in need of repair, he had been driving a car belonging to a friend. This car had a defective fuel pump on which he had made some temporary adjustment which did not permit the car to operate at a speed in excess of 30 miles per hour.

According to the testimony of an eyewitness, Bernard Masters, the Green car passed him about 600 feet from the intersection at a speed of 40 to 50 miles per hour, but there is other testimony to indicate that on one occasion Masters stated that the Green car was traveling at a greater speed. Masters estimated that, after the impact, the Green car went 20 feet in the air and rolled end over end.

Prior to her death, Mrs. Bradshaw's earnings had been used to assist in the care of the family and for the payment of its expenses. The Bradshaw family consisted of 10 minor children, all of whom at the time were living at home and dependent upon their parents. Since the accident, one of them has married and another has joined the State troops. The youngest of the remaining children at the time of trial was 2 years old and the eldest 17 years. Bradshaw is a veteran of World War I, and receives a pension. He was severely injured as a result of the accident. His average earnings were about $70 per week and his wife earned about $46 per week.

After his wife's death, Bradshaw was appointed administrator of her estate, and as such brought this action for damages under the death act, Act No. 38, Pub. Acts 1848 (3 Comp. Laws 1929, § 14061 *et seq.* [Stat. Ann. § 27.711 *et seq.*]), as last amended by Act No. 297, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14061 *et seq.*, Stat. Ann. 1945 Cum. Supp. § 27.711 *et seq.*).

During the trial the *ad damnum* clause of the declaration was amended as follows:

"Plaintiff Raymond Bradshaw, individually as distinguished from his representative capacity in this action, hereby waives and renounces all claim and right on his part as one of the statutory beneficiaries of the right of action herein alleged, to any

part of the proceeds thereof, and brings this statutory action, in his aforesaid representative capacity, in behalf of the aforesaid minor children of said deceased who have suffered pecuniary loss by reason of such wrongful death. Plaintiff claims the right to judgment against the defendant, on the right of action herein alleged and for the benefit of the aforesaid minor children of said deceased, in the sum of $10,000."

After the trial, Bradshaw having been discharged as administrator of his wife's estate and Ira Bricker having been appointed administrator *de bonis non* in his place, Bricker was, over defendant's objection, substituted as party plaintiff.

At the close of plaintiff's case a ruling on defendant's motion for a directed verdict was reserved. This motion was renewed at the close of the testimony and the trial judge, under the authority of *Ehrke* v. *Danek*, 288 Mich. 498, directed a verdict in favor of defendant.

On appeal, plaintiff's statement of questions involved is as follows:

"1. Did the trial judge err in refusing to permit plaintiff to prove that the father of the dependent minor children, for whose benefit this action is prosecuted, became permanently disabled and incapacitated by reason of the same tort that caused the decedent's death?

"2. Did the trial judge err in holding that asserted contributory negligence of the decedent's driver should be imputed in bar of this statutory right of action?

"3. Did the trial judge err in refusing to consider and pass upon the need for overruling the Michigan doctrine of imputable negligence?

"4. Did the trial judge err in holding that the decedent's driver was guilty of contributory negligence as a matter of law?

"5. Did the trial judge err in holding that the case of *Ehrke* v. *Danek* is controlling of the issues presented by appellee's motion for directed verdict?"

Defendant accepts plaintiff's statement of questions numbers 4 and 5 as appropriate. He contends that question No. 1 is neither involved nor material to this appeal and that questions 2 and 3 are not open to review. He submits an additional question as follows:

"No. 6. Where in an action brought for the wrongful death of a wife, survived by her husband and minor children, the surviving husband relinquishes all claim for damages arising out of her death, does not the action fail for want of a person suffering pecuniary loss?"

Without waiving other matters, the argument before this court on appeal was devoted largely to the question of imputed negligence. The writer of plaintiff's brief states the following therein:

"Mr. Miles K. Benedict, chairman of the committee on law reform of St. Clair County Bar Association, has asked and obtained leave to join as counsel herein for the purpose of supporting the five-year effort of his committee and his bar association to bring about abolition of the imputable negligence rule. That part of this brief which is topically headed, 'The Doctrine of Imputable Negligence Should Be Overruled,' is partly his work."

*Amicus curiae* briefs have been filed in this cause by Dearborn Bar Association, Down River Bar Association, Hamtramck Bar Association, National Lawyers Guild (Detroit Chapter), Wolverine Bar Association, Women's Lawyer's Association of Michigan, Wolverine Insurance Company and Citizens' Mutual Automobile Insurance Company.

The State Bar of Michigan has also filed an *amicus curiae* brief in which the historical development of the imputed negligence rule is fully discussed, each of the Michigan cases thereon analyzed, and there are appended to the brief citations of nine articles from the Michigan State Bar Journal on the subject.

Before we enter into a discussion of the imputed-negligence rule and its place in the law of Michigan, we must first determine plaintiff's question No. 1 and defendant's question No. 6 as above quoted. For the purpose of considering this phase of the present appeal, we assume that Green was guilty of negligence as the trial judge held; and as we now are writing the law of the case, it is of no consequence whether Bradshaw was guilty of negligence. However, the facts aimed at in plaintiff's first question have a bearing upon whether, under the circumstances of the case, the minor children suffered a pecuniary loss in consequence of their mother's death. At least for that purpose such facts should go to the jury.

May Mrs. Bradshaw's administrator recover under the death act?

It was not necessary that the trial judge determine this question in view of his holding under the imputed negligence rule.

Counsel for defendant, in their original brief, did not discuss whether the minor Bradshaw children constituted beneficiaries under the death act. They now argue, however, that the surviving husband and father is the sole beneficiary to the exclusion of his deceased wife's minor children.

The testimony shows that the minor children were receiving support from both parents prior to the death of the mother. The death act, after its amendment by Act No. 297, Pub. Acts 1939 (Comp. Laws

Supp. 1940, § 14061 *et seq.,* Stat. Ann. 1945 Cum. Supp. § 27.711 *et seq.*), is as stated by counsel for plaintiff, ''at least as broad in protecting such minor beneficiaries as the original death act.'' See *In re Olney's Estate,* 309 Mich. 65, and *Grimes* v. *King,* 311 Mich. 399. Under the act, long prior to its present amendment, this court said in *Rouse* v. *Detroit Electric Railway,* 128 Mich. 149, 155:

''The law requires in this class of cases that the administrator must show that some person has suffered some pecuniary injury by the death. The statute does not imply that damages and pecuniary loss necessarily flow from the negligent killing. * * * These damages must be limited to the pecuniary damage sustained by those legally entitled to support. *Van Brunt* v. *Railroad Co.,* 78 Mich. 530.''

See, also, *Ormsbee* v. *Railway Co.,* 197 Mich. 576.

Under the act as now amended the distribution of the damages awarded is determined by the probate judge. See Act No. 38, § 2, Pub. Acts 1848, as amended by Act No. 297, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14062, Stat. Ann. 1945 Cum. Supp. § 27.712). The testimony clearly shows that Mrs. Bradshaw's minor children suffered pecuniary loss by reason of her untimely death.

We come, then, to the question of imputed negligence. In this case, a wife who, while riding with her husband as a passenger, was killed by a combination of his negligence with that of a third party. Under the authorities as they now stand in this State, she could not have recovered had she survived nor can her administrator now recover. This rule, which exists only in Michigan, has been consistently applied in this State since the decision in *Lake Shore & Michigan Southern R. Co.* v. *Miller,* 25 Mich. 274, 277, decided in 1872, and it has been just

as consistently criticized both within and without this jurisdiction. This rule came into the law of Michigan by reason of dictum which appeared in the *Miller Opinion* and for which no authority was then cited. The court said in that case as to the right of defendant to recover:

"The materiality of this question must depend upon another: whether the plaintiff's own negligence, or that of Eldridge, who was driving the team, contributed to the injury, within the meaning of the generally settled rule upon this subject; for, as she was riding with Eldridge, the owner and driver of the team, any negligence of Eldridge equally affects her rights in this suit, as was properly held by the court."

Nineteen years later, in the case of *Schindler* v. *Railway Co.*, 87 Mich. 400, 411, Mr. Justice LONG, speaking for the court, explained the rule in the *Miller Case* by saying that the passenger "identified herself with the driver, and, unless the driver was free from negligence, she could not recover." Three years later the court divided in *Mullen* v. *City of Owosso*, 100 Mich. 103 (23 L. R. A. 693, 43 Am. St. Rep. 436), and Mr. Justice HOOKER, with whom Mr. Justice McGRATH joined in dissent, pointed out the following:

"The cases are not harmonious upon this question, but the great weight of authority is against the defendant's contention; the case of *Thorogood* v. *Bryan* (decided in 1849), 8 C. B. 115 (137 Eng. Rep. 452), which is considered the leading case sustaining the defendant's proposition, having been overruled in England, and repudiated in this country, generally, though followed in some States. That was a case of the collision of two omnibuses. The action against the owner of one by a passenger of the other was defeated upon the ground of contributory neg-

ligence, upon the theory that the passenger was so identified with the driver of his vehicle as to be chargeable with his negligence. This decision seems to rest upon an inference that the driver is the agent of the passenger, or at least that he is under the direction and control of the passenger. The case was disregarded in *Rigby* v. *Hewitt,* 5 Exch. 240 (155 Eng. Rep. 103), and distinctly overruled in *The Bernina,* 12 Prob. Div. 58; *Mills* v. *Armstrong,* 13 App. Cas. 1, 7. In the last case, Lord Herschell commented as follows upon the case of *Thorogood* v. *Bryan:*

" 'In short, as far as I can see, the identification appears to be effective only to the extent of enabling another person, whose servants have been guilty of negligence, to defend himself by the allegation of contributory negligence on the part of the person injured. But the very question that had to be determined was whether the contributory negligence of the driver of the vehicle was a defense, as against the passenger, when suing another wrongdoer. To say that it is a defense, because the passenger is identified with the driver, appears to me to beg the question, when it is not suggested that this identification results from any recognized principles of law, or has any other effect than to furnish that defense, the validity of which was the very point in issue.'

"In *Little* v. *Hackett,* 116 U. S. 366, 375 (6 Sup. Ct. 391, 29 L. Ed. 652), Mr. Justice Field uses the following language:

" ' 'The truth is, the decision in *Thorogood* v. *Bryan* rests upon indefensible ground. The identification of the passenger with the negligent driver or the owner, without his personal co-operation or encouragement, is a gratuitous assumption. There is no such identity. The parties are not in the same position. The owner of a public conveyance is a carrier, and the driver, or the person managing it, is his servant. Neither of them is the servant of the passenger, and his asserted identity with them is contradicted by the daily experience of the world.'

"The doctrine of *Thorogood* v. *Bryan* has met with similar treatment in most of the State courts of last resort, and, as to public conveyances, may be said not to state the law correctly. The reasons upon which these cases rest are equally conclusive in cases where the injured party was riding in a hired carriage with a driver from a livery stable, —in cases where the passenger does not, as a matter of fact, exercise such control over the driver as to make him his servant. See *Little* v. *Hackett, supra;. Missouri P. R. Co.* v. *Texas P. R. Co.*, 41 Fed. 316; *Larkin* v. *Railway Co.*, 85 Iowa, 492 (52 N. W. 480) ; *New York, L. E. & W. R. Co.* v. *Steinbrenner*, 47 N. J. Law, 161 (54 Am. Rep. 126) ; *Randolph* v. *O'Riordon*, 155 Mass. 331 (29 N. E. 583). In cases like the present the question becomes one of fact; the test of the passenger's responsibility for the negligence of the driver depending upon the passenger's control, or right of control, of the driver, so as to constitute the relation of master and servant between them. *Galveston, H. & S. A. R. Co.* v. *Kutac*, 72 Tex. 643 (11 S. W. 127) ; *Cahill* v. *Railway Co.*, 92 Ky. 345 (18 S. W. 2) ; *Nesbit* v. *Town of Garner*, 75 Iowa, 314 (39 N. W. 516, 1 L. R. A. 152, 9 Am. St. Rep. 486) ; *Dean* v. *Railroad Co.*, 129 Pa. 514 (18 Atl. 718, 6 L. R. A. 143, 15 Am. St. Rep. 733) ; *McCaffrey* v. *Canal Co.*, 16 N. Y. Supp. 495 ; *Masterson* v. *Railroad Co.*, 84 N. Y. 247 (38 Am. Rep 510) ; *Noyes* v. *Boscawen*, 64 N. H. 361 (10 Atl. 690, 10 Am. St. Rep. 410) ; *Follman* v. *City of Mankato*, 35 Minn. 522 (29 N. W. 317) ; *Philadelphia, W. & B. R. Co.* v. *Hogeland*, 66 Md. 149 (7 Atl. 105, 59 Am. Rep. 159) ; *State* v. *Railroad Co.*, 80 Me. 430 (15 Atl. 36) ; *Town of Knightstown* v. *Musgrove*, 116 Ind. 121 (18 N. E. 452, 9 Am. St. Rep. 827) ; *Chicago, St. L. & P. R. Co.* v. *Spilker*, 134 Ind. 380 (33 N. E. 280, 34 N. E. 218). It should not be inferred that a passenger can shelter himself behind the fact that another is driving the vehicle in which he rides, and relieve himself from his own personal negligence. What degree of

care should be required in the selection of a driver, or in observing and calling attention to dangers unnoticed by the driver, must depend upon the circumstances of each case."

The majority in the *Mullen Case,* however, took the position that this State would adhere to the rule in the *Miller Case,* giving the reason as follows:

"The rule laid down in the *Miller Case,* cited above, precludes a recovery. It has been too long settled to be now disturbed."

Since decision in the *Mullen Case* the doctrine of imputed negligence has been repudiated everywhere except in Michigan, and in this State we have refused to apply the doctrine with respect to minors (*Mullen* v. *City of Owosso, supra*); to city firemen (*McKernan* v. *Railway Co.,* 138 Mich. 519 [68 L. R. A. 347]); to occupants of public carriers for hire (*Cuddy* v. *Horn,* 46 Mich. 596 [41 Am. Rep. 178]); and to occupants of private carriers for hire (*Lachow* v. *Kimmich,* 263 Mich. 1 [90 A. L. R. 626, 32 N. C. C. A. 579]).

The *amicus curiae* brief of the State Bar of Michigan closes with this statement:

"In the typical case, there is presented, on the one hand, the plaintiff-passenger, wholly free of any negligence or wrongdoing. On the other hand, there is the tortfeasor whose negligence has brought harm to such passenger or contributed to such harm. The injured party brings suit. The court must choose between them, the one innocent, the other guilty! Which is to be preferred? Must we continue for all time to drag in this exploded and obsolete legal monstrosity with the sole result of throwing the loss on the innocent party? The 'imputed negligence' doctrine prefers the wrongdoer. He is the favored one and he is allowed to go free of responsibility for

his wrongdoing. The loss is thrown upon the innocent passenger. As has been pointed out, abolition of the pernicious doctrine would affect only the wrongdoer and that only to the extent of preventing his escape from liability for his own negligence to one free from fault. At rock-bottom, the imputed-negligence doctrine is a denial of justice as between parties litigant. Hence, the rule of *stare decisis* should not be invoked in its behalf to perpetuate it through the many years to come.''

Wisconsin was the last to abandon the rule and, in so doing, used the following language:

''Were it a rule of property, we should certainly apply to it the rule of *stare decisis*. But it is not a rule of property. It is a pure judicial decree relating to liability for negligence, and the court would not for a moment give countenance to an argument that a wrongdoer relied upon it. We are, therefore, at liberty to change the rule in the needs of justice, and to conform to the overwhelming majority rule.'' *Reiter* v. *Grober,* 173 Wis. 493 (181 N. W. 739, 18 A. L. R. 362).

See, also, 1 Wisconsin Law Review, pp. 193, 237, and the following: 59 A. L. R. 153; 90 A. L. R. 630; 110 A. L. R. 1099; 123 A. L. R. 1171.

We remain alone in applying the rule and our position is predicated upon *stare decisis*. In discussing the problem thus confronting us, Chief Justice Von Moschzisker said in 37 Harvard Law Review, at pages 409, 415:

''In instances where the earlier opinion announced and acted on a rule fixing the status of property or affecting the title to real estate, the court should continue to enforce the rule previously adhered to, even though the judges may think it erroneous in theory or antiquated in practice because of changed conditions, leaving it to the legislature alone to make the

needed reform; for the whole fabric of our economic system is so closely interwoven with the ownership of property that stability in this regard is of the utmost importance. Similarly, wherever the law laid down in a decision or line of decisions has apparently entered into the general life of the people, and it is fair to assume that many contracts have been made on faith in rules of action so announced, or that they have given rise to or form standards of trade, the doctrine of *stare decisis* should apply with all its vigor; and this is the case wherever the rule of property, contract, or trade has become settled and, in the course of time, has been acted upon, whether the decree results from a judicial interpretation of the unwritten law, a statute, or the Constitution.

"In the classes of cases covered by the preceding paragraph, it is conceded generally that the common welfare is best served by the court's strictly following the rule of *stare decisis;* but, in such instances, where the court, while adhering to the doctrine, conceives, after mature deliberation, that its prior decisions are wrong, it ought not to hesitate to announce a belief (should the general importance of the point involved seem to warrant such a course) that the time has come for a change, so that the law makers in the legislature, if they see fit, may take heed and proceed accordingly. This is so where the law previously laid down is conceived to be erroneously stated or applied, and likewise where a court concludes the rule involved has become obsolete or inapplicable because of lapse of time and changes in the life of the people.

"When, however, the prior decisions do not relate to titles, establish rules of trade, property, or contract, support public institutions, or fall into any other of the categories above suggested, and the court concludes, after mature deliberation in a subsequent case, that its earlier views were inherently wrong, or the rulings relied on have become inap-

plicable through lapse of time and change of condition, it should not hesitate thus to hold, if the call of justice in the controversy before it so requires."

Mr. Justice Cardozo, in his William L. Storrs Lectures before the Law School of Yale University in 1921, had this to say, as printed in his book, entitled, "The Nature of the Judicial Process," pp. 142, 150:

"But I am ready to concede that the rule of adherence to precedent, though it ought not to be abandoned, ought to be in some degree relaxed. I think that when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment. We have had to do this sometimes in the field of constitutional law. Perhaps we should do so oftener in fields of private law where considerations of social utility are not so aggressive and insistent. There should be greater readiness to abandon an untenable position when the rule to be discarded may not reasonably be supposed to have determined the conduct of the litigants, and particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years. In such circumstances, the words of Wheeler, J., in *Dwy* v. *Connecticut Co.*, 89 Conn. 74, 99 (92 Atl. 883, L. R. A. 1915 E, 800, Ann. Cas. 1918 D, 270), express the tone and temper in which problems should be met:

" 'That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in

reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and it should not be stationary. Change of this character should not be left to the legislature.'

"If judges have woefully misinterpreted the *mores* of their day, or if the *mores* of their day are no longer those of ours, they ought not to tie, in helpless submission, the hands of their successors."

Ever since 1872 we have adhered to the imputed negligence rule. We have recognized from time to time the changes brought about by the innovations of science and engineering, and we have carefully considered at much length the implications of the rule, its application, and the effect of its abandonment. As a result of our study and observation we are convinced that in the long run the application of the rule is more harmful than helpful and results in more injustice than it prevents; and that we should not continue the invariable application of the so-called imputed negligence rule merely and solely on the ground that the injured person was a voluntary, gratuitous passenger in an automobile, the driver of which was guilty of negligence which was a contributing proximate cause of an accident and injury to such passenger.

Our holding herein should not be construed as excluding under appropriate circumstances the defense of contributory negligence on the part of the passenger, if relative to the cause of the accident the passenger failed to exercise such reasonable care and caution as he should have exercised under the circumstances.

The following from 2 Restatement of the Law of Torts, p. 857, § 315, comment (b), is pertinent on this point:

"On the other hand, under the rule stated in section 495, the actor is guilty of contributory negligence if he fails to exercise an ability which he, in fact, has to control the conduct of any third person where a reasonable man would realize that the exercise of his control is necessary to his own safety. Thus, if the actor, while riding merely as a guest, does not warn the driver of a danger of which he knows and of which he has every reason to believe that the driver is unaware, by failing to do so he becomes guilty of contributory negligence which precludes him from recovery against another driver whose negligent driving is also a cause of a collision in which the actor is himself injured."

The rule of imputed negligence as announced and applied in *Lake Shore & Michigan Southern Railroad Co.* v. *Miller,* 25 Mich. 274, and in subsequent cases of like character, is overruled, so far as pending and future cases are concerned. Notwithstanding the fact that the trial judge applied the law as laid down in our opinions, we must, in view of our present holding, set aside the judgment of no cause of action and order a new trial. In so doing, we desire to express our appreciation for the helpful briefs filed by counsel for both parties, and each *amicus curiae.*

The judgment is vacated and the cause is remanded for further proceedings in conformity with this opinion. Costs of this appeal will abide the final decision of this case.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.