GUSLER v FAIRVIEW TUBULAR PRODUCTS

Docket No. 63538. Argued May 6, 1980 (Calendar No. 1).—Decided December 30, 1981. Rehearing granted 414 Mich 1102.

Karen Gusler suffered a work-related back injury in 1977, and was voluntarily paid workers' compensation benefits of $64 per week, two-thirds of her average weekly wages, by her employer, Fairview Tubular Products, through its insurer, Farm Bureau Insurance Group. She petitioned the Bureau of Workers' Disability Compensation for a determination of the benefits payable, and was awarded $96 per week, the minimum rate for a claimant with two dependents as adjusted for 1977 by the Director of the Bureau of Workers' Disability Compensation in accordance with the increase in the average weekly wage in the covered employment. The Workers' Compensation Appeal Board affirmed. The Court of Appeals, R. B. Burns, P.J., and D. E. Holbrook, Jr., and Burdick, JJ., affirmed in a per curiam opinion (Docket No. 43105). Defendants appeal, arguing that the Worker's Disability Compensation Act provides for adjustments of the maximum rates of benefits but not of the minimum rates.

In an opinion by Justice Ryan, joined by Chief Justice Coleman and Justices Kavanagh, Levin, and Fitzgerald, the Supreme Court *held:*

The Legislature did not intend that the minimum rates

REFERENCES FOR POINTS IN HEADNOTES

[1-11, 13-21] 81 Am Jur 2d, Workmen's Compensation §§ 27-29.
82 Am Jur 2d, Workmen's Compensation §§ 368, 369, 382, 592.
[3] 73 Am Jur 2d, *Statutes* §§ 194, 195.
[4, 20] 73 Am Jur 2d, Statutes §§ 131, 343.
[5] 73 Am Jur 2d, Statutes § 197.
[6, 7, 8, 11] 73 Am Jur 2d, Statutes § 254.
[9, 17] 82 Am Jur 2d, Workmen's Compensation § 347.
[12] 81 Am Jur 2d, Workmen's Compensation §§ 2, 27-29.
[13, 14] 73 Am Jur 2d, Statutes § 145.
82 Am Jur 2d, Workmen's Compensation §§ 358, 486.
[15] 82 Am Jur 2d, Workmen's Compensation § 358.
[16] 73 Am Jur 2d, Statutes §§ 145, 169.
[17] 82 Am Jur 2d, Workmen's Compensation § 486.
[18] 82 Am Jur 2d, Workmen's Compensation § 486.
[21] 73 Am Jur 2d, Statutes § 159.

should be adjusted by the Director of the Bureau of Workers' Disability Compensation.

1. The Legislature failed to make specific provision for adjustment of minimum rates while explicitly doing so for maximum rates.

2. The legislative intent may be discovered in the legislative history of the statute. Adjustments to both the maximum and minimum rates in each dependent classification were made expressly and by a separate legislative act in 1952, 1954, and 1956. In 1965, however, the Legislature amended the statute to provide for annual adjustment of the rates of maximum benefits according to a formula, and also set out specific increasing maximum rates between September 1, 1965 and January 1, 1969, with flat minimum rates to remain unchanged during that time. The provision for annual adjustment by the Director of the Bureau of Workers' Disability Compensation, by its own terms, was inoperative until January 1, 1969, when it was to carry on the progression of adjustments in the maximum rates only. There is no discernible reason for the Legislature to provide unambiguously that the minimum rates for workers' compensation would remain unchanged for 1965 to 1969 and then to have another statutory provision suddenly act to adjust the minimum rates for all subsequent years. That conclusion is fortified by the failure of the Legislature to refer in the adjustment provision to the minimum rates, while it refers to the maximum rates four times in the same provision. The basic provisions of the statute have remained intact even though the Legislature has reconsidered and re-enacted essentially the same scheme in the Worker's Disability Compensation Act of 1969.

3. The plain language of the adjustment provision, § 355, makes no reference to minimum rates. It would be unreasonable to conclude that "maximum rates" refers to anything more than the ceilings established in § 351 to which § 355 is cross-referenced. While such a reading of the statute makes the language "except as provided in section 355" after the clause establishing minimum rates in § 351 nugatory, it does not destroy any substantive provision in the statute. It merely renders the cross-reference surplusage and of the same significance it had when it was first enacted in 1965, before the adjustment provision became effective. To give the statute the interpretation advocated by the plaintiff would require that the Court write into the statute a substantive amendment, which would amount to an unconstitutional usurpation of the legislative power.

4. The Worker's Disability Compensation Act must be con-

strued as a whole so that its provisions harmonize, rather than conflict, with one another. There is no plausible reason for the Legislature to make the adjustment which the plaintiff claims in minimum rates for a disabled worker, while unambiguously providing no adjustment of the minimum rates for the surviving dependents of an employee killed in the course of his employment. Further, adjustment of the minimum rate would impair the operation of that section of the statute which provides for a yearly reduction of benefits after the age of 65 to a minimum of 50% of the benefits at the age of 65, because the adjusted minimum is already about 80% of the adjusted maximum and its percentage of the maximum will increase if both are adjusted upward dollar for dollar. It is also unlikely that the Legislature intended to maintain an arbitrary difference of $37 between the maximum and minimum rates, which would be the effect of matching each adjustment in the maximum rates with an equal one in the minimum rates. Such a scheme would render the primary calculation of the benefit, two-thirds of the average weekly wage, ineffective in many cases.

5. If the minimum rates are adjusted, all disabled workers would eventually be compensated at precisely the same rates. Such a result would not comport with the policy of the Worker's Disability Compensation Act to compensate workers for their loss of wage-earning capacity, unless one adopts the unwarranted fiction that all workers in a free society have the same wage-earning capacity. Rather, the Legislature, aware of the economic facts in this state, assumed that the upward pressures on wages would continue to adjust the rates of benefits for workers on the lower ends of the economic scale and that the annual adjustments to the maximum rates of compensation would create some parity between the prescribed two-thirds of the average weekly wage and maximum compensation benefits in an economy which is generally expanding.

6. The holding in this case, because it is contrary to the statutory interpretations of the Bureau of Workers' Disability Compensation, the Workers' Compensation Appeal Board, and the Court of Appeals, is not unlike the announcement of a new rule of law. In the interest of fairness, this case should not affect any workers' compensation payments already made under the erroneously adjusted minimum benefits. However, any benefits due and not yet paid, or benefits awarded after the date of the opinion in this case, shall be in conformity with the decision.

Reversed and remanded.

Justice Williams, joined by Justice Moody, dissented. He wrote:

1. Effect must be given, if possible, to every word of the statute; in cases of statutory interpretation, courts are bound to determine legislative intent. In this case interpretation is necessary because the identical phrase "except as provided in section 355" is used in § 351 after both the clause establishing maximum benefits and that establishing minimum benefits, but § 355 speaks only of adjustment of the maximum benefit without mentioning the minimum benefit. Unless both maximum and minimum are subject to the same adjustment, the phrase "except as provided in section 355" used in connection with the minimum benefit does nothing. It will not be presumed that the Legislature used words without a purpose. A reading which makes the adjustment apply to both maximum and minimum benefits gives effect to each word in the two provisions.

2. The Court always has construed the Worker's Disability Compensation Act in a manner which weighs its humanitarian objectives and beneficent purposes. The adjustment provision is the Legislature's attempt to provide some relief from the pervasive inflation which has particularly afflicted this state over the past 20 years. The goal of the statute is to provide, in an efficient and dignified form, certain financial and medical benefits for employees who suffer injuries at the workplace. The plaintiff was employed at the minimum wage. The rate of her benefits, at most $96 per week, will remain the same as determined at the time of her injury unless she establishes that she is totally and permanently disabled, although the minimum wage and the cost of living can be expected to rise. Benefits of $96 per week when the plaintiff's earnings at the minimum wage would now be $124 per week do not encourage malingering.

3. Between 1949 and 1965 the Legislature considerably increased the statutory minimum rates for workers' compensation benefits, clearly showing its concern with providing additional protection for persons who earn the minimum wage. In 1965, the statute was amended to require annual adjustment of the rates for claimants receiving maximum benefits. In 1969, by removing the statutory language which limited the adjustment to the maximum rates, the Legislature provided a clear signal of its intent to allow cost-of-living increments for both the maximum and minimum rates. The Court would indeed be arrogating the legislative power to itself if it were to read into the statute the precise limitation which the Legislature rejected over 11 years ago.

4. Since the statute was amended in 1969, the Director of the

Bureau of Workers' Disability Compensation has annually announced increases in both the maximum and minimum rates of compensation, and that interpretation of the statute has been applied, without exception, by the administrative law judges of the bureau, the Workers' Compensation Appeal Board, and the Court of Appeals. The Court must give appropriate deference and weight to the longstanding construction given to the statutory provisions by the agency designated by the Legislature to administer them. Furthermore, the Legislature has not spoken on the issue presented in this case since 1969 when it removed the language which limited the adjustments to only the maximum rates. Such silence in the face of an invariant interpretation by the administrative agency and the Court of Appeals, while not controlling, combines with the clear indication of the legislative intent to give some relief to persons receiving minimum wages, to provide overwhelming evidence that the adjustments are to apply to the minimum benefits.

5. The defendants argue that an employer cannot be required to pay workers' compensation benefits in excess of two-thirds of the employee's average weekly wage at the time of the injury. The Court has never adhered to the notion that substitution for lost wages is the sole purpose of the Worker's Disability Compensation Act. The legislative policy expressed in the statute can operate to compel one employer to pay an employee more in compensation than he would have paid in wages because it is the legislative intent to compensate loss of earning capacity, not merely lost wages. The Legislature clearly has not made the requirement that the benefits equal two-thirds of the employee's average weekly wage controlling in every case. The defendants argue that the present adjusted minimum rate exceeds the amount that a person would earn by working a 40-hour week at the minimum wage and that such a situation encourages fraud. Changes, if any, in this situation must be undertaken by the Legislature. Where the adjusted minimum benefits exceed two-thirds of the claimant's average weekly wage at the time of injury, the adjusted minimum rate for the claimant's classification controls.

Justice Moody, dissenting, signed the opinion of Justice Williams and also wrote separately to explain additional reasons for his conclusion.

1. The decision to overrule established precedent and practice requires the Court to erase a clear legislative command, to avoid segments of legislative history, and to usurp the legislative function. The plain language of the statute subjected both

the maximum and minimum rates to the adjustment provision by its cross-reference "except as provided in section 355".

2. The language of the adjustment provision does not specifically refer to minimum rates but says that the maximum weekly rate in each dependency classification shall be adjusted. The word "maximum" in that section refers to the highest amount which is payable in each classification rather than just to the rate which is payable where the employee's weekly wage exceeds the state's average weekly wage. When read together, the statutory provisions mean that the adjustments apply to all the dependency classifications listed. The plain language, including all the phrases and cross-references, suggests a legislative command which should not be judicially erased, particularly since it promotes the humanitarian and remedial aims of the Worker's Disability Compensation Act.

3. Between 1949 and 1965 the Legislature increased both the maximum and minimum rates of benefits on almost every occasion when it altered the rates of compensation to reflect changes in economic conditions. In 1965, the Legislature amended the statute by using language to allow for automatic adjustments beyond 1969, and in 1969 revised the statute and specifically retained the cross-reference which applies the adjustment provision to the minimum rates, thus endorsing the 1965 amendment.

4. Inconsistencies within the Worker's Disability Compensation Act lend little assistance to the reader in ascertaining the legislative intent. The Legislature may have had a reason for treating cases in which the worker was killed in the course of his employment differently than cases in which the worker was disabled. Further, it is equally plausible to suggest that the Legislature made a mistake by leaving out of the provision on survivors' benefits a cross-reference to the adjustment provision. The provision which requires a reduction of benefits each year after the worker reaches the age of 65 also specifically provides that the payments cannot be reduced below the weekly benefit provided in the act. Therefore, it may be concluded that the Legislature intended to temper the provision which reduces the benefits 50% over ten years so that in no event would the benefits fall below the adjusted minimum weekly benefits.

5. It is argued that the Legislature would not have intended the inequitable results of increasing adjustments to the minimum rates of benefits. However, it is the statute as amended by the Legislature which establishes the law before the Court. The statute specifically makes provision for increases in the maxi-

mum and minimum rates. It is for the Legislature to change its prior specific statutory commands, as it has done in 1980.

*Jolliff v American Advertising Distributors, Inc,* 49 Mich App 1; 211 NW2d 160 (1973), overruled.

—92 Mich App 164; 284 NW2d 487 (1979) reversed.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — STATUTES — CONSTRUCTION.

The Legislature did not intend that the minimum rates of weekly benefits should be adjusted each year by the Director of the Bureau of Workers' Disability Compensation in accordance with the increase in the average weekly wage in the covered employment (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).

2. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — STATUTES — CONSTRUCTION.

The legislative history of the Worker's Disability Compensation Act does not show that the Legislature intended to provide for adjustment of the minimum rates of weekly benefits in accordance with the increase in the average weekly wage in the covered employment where it provided unambiguously that the minimum rates for workers' compensation would remain unchanged from 1965 to 1969 while the maximum rates would increase each year, and further provided for adjustment of the maximum by a formula from 1969 on without mentioning the minimum (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).

3. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — STATUTES — CONSTRUCTION.

The plain language of the provision of the Worker's Disability Compensation Act for adjustment of the rates of compensation in accordance with the increase in the average weekly wage in the covered employment makes no reference to minimum rates; it would be unreasonable to conclude that "maximum rates" refers to anything more than the ceilings established in another provision of the statute to which the adjustment provision is cross-referenced (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).

4. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — STATUTES — CONSTRUCTION.

To conclude that the Worker's Disability Compensation Act does not provide for adjustment of the minimum rates of benefits in accordance with the increase in the average weekly wage in the

covered employment does not destroy any substantive provision in the act, but merely renders the cross-reference "except as provided in section 355" after the clause establishing minimum rates surplusage and of the same significance it had when it was first enacted in 1965, before the adjustment provision became effective (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).

5. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — STATUTES — CONSTRUCTION.

To interpret the Worker's Disability Compensation Act as providing that the minimum rates of weekly benefits should be adjusted in accordance with the increase in the average weekly wage would require that the Court write into the statute a substantive amendment, an unconstitutional usurpation of the legislative power (Const 1963, art 3, § 2; MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).

6. WORKERS' COMPENSATION — MINIMUM BENEFIT — STATUTES — CONSTRUCTION.

There is no plausible reason for the Legislature to make an adjustment in minimum rates of workers' compensation benefits for a disabled worker in accordance with the increase in the average weekly wage in the covered employment, while unambiguously providing no adjustment of the minimum rates for the surviving dependents of an employee killed in the course of his employment (MCL 418.321, 418.351, 418.355; MSA 17.237[321], 17.237[351], 17.237[355]).

7. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — STATUTES — CONSTRUCTION.

The Worker's Disability Compensation Act should be construed, if possible, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error; one cannot ascribe to the Legislature an unexpressed intention that the minimum rates of compensation should be adjusted in accordance with the increase in the average weekly wage because it would impair the effectiveness of the provision for a yearly reduction of benefits after the age of 65 (MCL 418.351, 418.355, 418.357; MSA 17.237[351], 17.237[355], 17.237[357]).

8. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — STATUTES — CONSTRUCTION.

It is unlikely that the Legislature intended to maintain an

arbitrary difference of $37 between the maximum and minimum rates of workers' compensation benefits, which would be the effect of matching each adjustment in the maximum rates with an equal one in the minimum rates, because such a scheme would render the primary calculation of the benefit, two-thirds of the average weekly wage, ineffective in many cases (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).

9. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — STATUTES — CONSTRUCTION.

Adjustment of minimum weekly rates of workers' compensation benefits in accordance with the increase in the average weekly wage in the covered employment would not comport with the policy of the Worker's Disability Compensation Act to compensate workers for their loss of wage-earning capacity because it would eventually result in the compensation of all disabled workers at precisely the same rates whatever their loss of wage-earning capacity (MCL 418.351, 418.355, 418.371[1]; MSA 17.237[351], 17.237[355], 17.237[371][1]).

DISSENTING OPINION BY WILLIAMS, J.

10. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT.

*Minimum weekly rates of benefits established by the Worker's Disability Compensation Act are to be adjusted once each year by the Director of the Bureau of Workers' Disability Compensation in accordance with the increase or decrease in the average weekly wage in the covered employment as determined by the Employment Security Commission (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).*

11. WORKERS' COMPENSATION — MINIMUM BENEFIT — STATUTES — CONSTRUCTION.

*The Worker's Disability Compensation Act should be construed, if possible, so that no part will be inoperative or superfluous, void, or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error; it is not persuasive to argue that the Legislature inadvertently or deliberately inserted language in one provision of the statute explicitly referring to another provision, which becomes meaningless in applying the other provision (MCL 418.101 et seq.; MSA 17.237[101] et seq.).*

12. WORKERS' COMPENSATION — STATUTORY CONSTRUCTION — LEGISLATIVE PURPOSE.

*The goal of the Worker's Disability Compensation Act is to provide, in an efficient and dignified form, certain financial and*

*medical benefits for employees who suffer injuries at the work-place and to assure recovery of benefits, regardless of fault, in lieu of a tort recovery against the employer; the Court has construed the statute since its inception by weighing its humanitarian purposes and beneficent objectives (MCL 418.101 et seq.; MSA 17.237[101] et seq.).*

13. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — LEGISLATIVE INTENT.

*The provision of the Worker's Disability Compensation Act for adjustment of the rates of compensation in accordance with changes in the average weekly wage in the covered employment is the Legislature's attempt to provide some relief from the pervasive inflation which has particularly afflicted this state for over 20 years; the adjusted benefits are determined at the time of injury and remain static, although the minimum wage and the cost of living can be expected to rise, so that a claimant receiving the adjusted benefits would not be encouraged to malinger (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).*

14. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — LEGISLATIVE INTENT — STATUTORY CONSTRUCTION.

*The Legislature has provided a clear signal of its intent to allow adjustments to reflect changes in the cost of living for both minimum and maximum benefits established by the Worker's Disability Compensation Act by removing the statutory language which limited the adjustments to the maximum rates; the Court would be arrogating the legislative power to itself if it were to read into the statute the precise limitations which the Legislature rejected (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).*

15. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — ADMINISTRATIVE LAW — STATUTORY CONSTRUCTION.

*The Court must give appropriate deference and weight to the longstanding construction given by the Bureau of Workers' Disability Compensation to the statute by its annual announcements of adjustments to the minimum workers' compensation benefits established by the statute, as well as the maximum rates, to reflect changes in the cost of living (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).*

16. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — ADMINISTRATIVE LAW — STATUTORY CONSTRUCTION.

*Silence of the Legislature in the face of an invariant interpreta-*

tion by the Bureau of Workers' Disability Compensation and the Court of Appeals that there must be an annual adjustment to the minimum rates of workers' compensation benefits as well as the maximum, while not controlling, combines with the clear indication of legislative intent to give some relief to persons receiving minimum wages, to provide overwhelming evidence that the adjustments are to apply to the minimum benefits (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).

17. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — LEGISLATIVE INTENT.

The legislative intent of the Worker's Disability Compensation Act is to compensate loss of earning capacity, not merely lost wages; the Legislature clearly has not made the requirement that the benefits equal two-thirds of the employee's average weekly wage at the time of injury controlling in every case, and the legislative policy expressed in the statute can operate to compel an employer to pay an employee more in compensation than he would have paid in wages (MCL 418.101 et seq.; MSA 17.237[101] et seq.).

18. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT.

The requirement of the Worker's Disability Compensation Act that the benefits equal two-thirds of the employee's average weekly wage at the time of injury is superseded by the minimum rates of compensation for the claimant's classification as adjusted by the Director of the Bureau of Workers' Disability Compensation in accordance with the increase or decrease in the average weekly wage in the covered employment as determined by the Employment Security Commission where the adjusted rates exceed two-thirds of the employee's wages (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).

DISSENTING OPINION BY BLAIR MOODY, JR., J.

See headnotes 10-18.

19. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT — STATUTES — CONSTRUCTION.

The decision to overrule established precedent and practice of adjusting the minimum rates of workers' compensation weekly benefits in accordance with the increase in the average weekly wage in the covered employment requires the Court to erase a clear legislative command, to avoid segments of legislative history, and to usurp the legislative function (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).

20. WORKERS' COMPENSATION — MINIMUM BENEFIT — ADJUSTMENT —
STATUTES — CONSTRUCTION.

*The plain language of the Worker's Disability Compensation Act subjected both the maximum and minimum rates of weekly benefits to the adjustment provision by its cross-reference "except as provided in section 355" (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).*

21. WORKERS' COMPENSATION — MINIMUM BENEFIT — STATUTES —
CONSTRUCTION.

*The provisions of the Worker's Disability Compensation Act, when read together, mean that the adjustments of the rates of compensation in accordance with changes in the average weekly wage in the covered employment apply to all the dependency classifications listed; the plain language, including all the phrases and cross-references, suggests a legislative command which should not be judicially erased, particularly since it promotes the humanitarian and remedial aims of the Worker's Disability Compensation Act (MCL 418.351, 418.355; MSA 17.237[351], 17.237[355]).*

*Fred E. Foster* for plaintiff.

*Davidson, Breen & Doud, P.C.,* for defendants.

Amici Curiae:

*Kelman, Loria, Downing, Schneider & Simpson* (by *Robert W. Howes)* for Michigan Trial Lawyers Association.

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Thomas P. Chuhran),* for Michigan Self-Insurers' Association.

RYAN, J. We granted leave to appeal in this case to consider whether the cost of living increases in workers' disability compensation benefits provided for in MCL 418.355; MSA 17.237(355) (hereinafter § 355) apply to the minimum as well as the maximum weekly rates for total disability as estab-

lished in MCL 418.351; MSA 17.237(351) (hereinaf-
ter § 351).

At the time of her injury in March of 1977,
plaintiff was employed by the defendant Fairview
Tubular Products. She was a full-time employee
normally working 40 hours a week at the then-
prevailing minimum wage of $2.40/hour for a
weekly gross wage of $96. Deductions for federal
and state taxes and social security reduced her
weekly gross pay to $77.62.

Defendant voluntarily began paying plaintiff
compensation benefits of $64 per week, a rate two-
thirds of her gross wage of $96 per week, comport-
ing with the general provision of § 351. Plaintiff
petitioned for a determination whether she was
receiving the proper rate of compensation under
the formula prescribed in §§ 351 and 355 for a
disabled employee with two dependents.

After consideration of the parties' claims, the
hearing officer entered the following order:

"It is ordered that the matter has been submitted on
stipulated facts and briefs and the singular issue as to
whether petitioner is being paid voluntarily the correct
amount of weekly benefits. I find that the *Jolliff*[1] deci-
sion is applicable. The correct weekly benefit rate for
petitioner with two dependents and an alleged injury
date of 3-25-77 is the minimum of $96.00 per week
pursuant to § 351 and the director's annual adjustment.
I interpret the stipulation of the parties to be, and I so
order, that the defendant shall pay the correct rate
from date of injury to the date of this order with credit
for payments already made." (Footnote added.)

The director's annual adjustment is of course a
reference to the provisions of § 355. The practical
effect of the order in this instance was to award to

[1] *Jolliff v American Advertising Distributors, Inc,* 49 Mich App 1;
211 NW2d 260 (1973), *lv den* 391 Mich 780 (1974).

the plaintiff compensation benefits which coincidentally matched her gross wages but which, in fact, paid her more weekly net income than she was receiving in her full-time employment, since the compensation award was not subject to tax.

Both the Workers' Compensation Appeal Board[2] and the Court of Appeals[3] subsequently affirmed the increased award on the basis of the *Jolliff* case in which the Court of Appeals, in 1973, approved an interpretation of §§ 351 and 355 which would adjust minimum as well as maximum rates. *Jolliff v American Advertising Distributors, Inc,* 49 Mich App 1; 211 NW2d 260 (1973).

## I

The heart of the dispute is whether the Legislature ever intended that the minimum benefit rates of § 351 were to be adjusted in accordance with § 355. We are convinced it did not.

Section 351(1), as applicable at the time of this injury, provided:

"(1) While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of 2/3 of his average weekly wages, *but not more* than $64.00, if such injured employee has no dependents; $69.00 if 1 dependent; $75.00 if 2 dependents; $81.00 if 3 dependents; $87.00 if 4 dependents; and $93.00 if 5 or more dependents; *except as provided in section 355.* Compensation shall be paid for the duration of the disability. Weekly payments shall *not be less than* $27.00 if there are no dependents; $30.00 if 1 dependent; $33.00 if 2 dependents; $36.00 if 3 dependents; $39.00 if 4 dependents; and $42.00 if 5 or

---

[2] 1978 WCABO 3613.

[3] Court of Appeals per curiam opinion, 92 Mich App 164; 284 NW2d 487 (1979).

more dependents; *except as provided in section 355.*
Compensation shall be paid for the duration of the
disability. The conclusive presumption of total and
permanent disability shall not extend beyond 800 weeks
from the date of injury and thereafter the question of
permanent and total disability shall be determined in
accordance with the fact, as the fact may be at that
time." (Emphasis added.)

As is evident, there are two references subjecting
§ 351 to the adjustment provisions of § 355; one
following the maximum and another following the
minimum rates established for each dependency
classification.

At the time of the plaintiff's injury, § 355 pro-
vided:

"(1) The *maximum weekly rate* in each dependency
classification in this act shall be adjusted once each
year in accordance with the increase or decrease in the
average weekly wage in covered employment, as deter-
mined by the employment security commission. The
average weekly wage in covered employment deter-
mined by the employment security commission for the
year ending June 30, 1967, shall be the base on which
such adjustments are made.

"(2) A second adjustment, if any, shall be made on
January 1, 1970 and shall reflect the change, if any,
between the average weekly wage for June 30, 1969 and
the average weekly wage for June 30, 1968 and the
adjustment shall be made in like manner on each
January 1 thereafter, utilizing the average weekly wage
for the preceding June 30.

"(3) Adjustment for the statutory *maximum rate*
shall be made only if there has been an increase or
decrease in the average weekly wage of at least $1.50
during the preceding year, applied to the June 30, 1967,
base and the director shall announce the adjustment
each December 1, to become effective the following
January 1. If in any year the change is less than $1.50,
the director shall announce no change for the following

year but the amount of change in such year shall be carried forward and added to or subtracted from subsequent annual determinations until the *total* change shall be at least $1.50, in which year an adjustment shall be made. There shall be an adjustment made of $1.00 in the *maximum rates* for each $1.50 increase or decrease in the average weekly wage. The *maximum weekly rate* as so determined for the year in which the date of injury occurred shall remain fixed without further change as to the personal injury occurring within such year." (Emphasis added.)

In providing for the adjustment of benefits, the foregoing section makes reference solely to maximum rates on four separate occasions. Nevertheless, it is the plaintiff's claim, concurred in by the WCAB and the Court of Appeals and based on *Jolliff,* that the language following the minimum rates established in § 351 and subjecting them to § 355 should be interpreted as requiring an annual adjustment to minimum rates equal to any adjustment in the maximum rates.

We disagree with this interpretation and hold that no adjustment to the minimum rates prescribed in § 351 is authorized because none was intended by the Legislature. We reach that conclusion because of 1) the Legislature's failure to make specific provision for adjustment of minimum rates while explicitly doing so with respect to maximum rates, 2) an analysis of the history of the provision in question, and 3) the internal conflicts and plainly absurd results which plaintiff's construction of the statute would effect.

II

In construing the Worker's Disability Compensation Act, we are bound to effectuate legislative intent. *Dyer v Sears, Roebuck & Co,* 350 Mich 92;

85 NW2d 152 (1957). Our effort to discover the apparent intent of the Legislature in this matter begins with an examination and analysis of the history of our present §§ 351 and 355, formerly MCL 412.9; MSA 17.159.

Prior to 1949 the general legislative scheme for workers' disability compensation provided for payments of two-thirds of average weekly wages and those payments could in no case exceed $21 per week or fall below $10 per week, without regard to the number of a claimant's dependents. Dependency classifications were added by 1949 PA 238 and both maximum and minimum rates were raised and provision was made for maximum and minimum rates in each classification. Subsequently, adjustments to both the maximum and minimum rates in each dependency classification were effected by 1952 PA 263; 1954 PA 175; and 1956 PA 195. Each time an adjustment to either the maximum or minimum rates was made, it was done expressly and by a separate legislative act.

In 1965, however, pursuant to 1965 PA 44, the Legislature amended MCL 412.9; MSA 17.159, in a fashion designed to eliminate the need to adjust the compensation levels by separate legislative act every few years. It undertook to make maximum levels "self" adjusting with the aid of the Michigan Employment Security Commission.

Specifically, the pertinent provisions of 1965 PA 44, codified at MCL 412.9(a); MSA 17.159(a) read:

"(a) While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of 66-2/3% of his average weekly wages, but not more than $58.00 as of September 1, 1965, $61.00 as of September 1, 1966 and $64.00 as of September 1, 1967 if such injured employee has no

dependents; $63.00 as of September 1, 1965, $66.00 as of September 1, 1966 and $69.00 as of September 1, 1967 if 1 dependent; $70.00 as of September 1, 1965, $72.00 as of September 1, 1966 and $75.00 as of September 1, 1967 if 2 dependents; $77.00 as of September 1, 1965, $79.00 as of September 1, 1966 and $81.00 as of September 1, 1967 if 3 dependents; $84.00 as of September 1, 1965, $86.00 as of September 1, 1966 and $87.00 as of September 1, 1967 if 4 dependents and $91.00 as of September 1, 1965, $92.00 as of September 1, 1966 and $93.00 as of September 1, 1967 if 5 or more dependents, *except as provided in subsection (f).* Compensation shall be paid for the duration of the disability. Weekly payments shall in no event be less than $27.00 if there are no dependents; $30.00 if 1 dependent; $33.00 if 2 dependents; $36.00 if 3 dependents; $39.00 if 4 dependents; and $42.00 if 5 or more dependents; *except as provided in subsection (f).* Compensation shall be paid for the duration of the disability." (Emphasis added.)

The provision perpetuated the basic two-thirds of average weekly wages formula which was the historic basis for determining benefit amount, but set out maximum rates which increased annually and which covered the period from September 1, 1965 to January 1, 1969. At the same time, a flat minimum rate was established for each dependency classification which would remain unchanged.

The 1965 act also subjected both the maximum and minimum rates to the provisions of subsection (f), the antecedent of § 355 with which we are concerned today.

Subsection (f), first created in 1965 PA 44, read:

"The *maximum weekly rate* in each dependency classification shall be adjusted once each year in accordance with the increase or decrease in the average weekly wage in covered employment, as determined by the Michigan employment security commission. The aver-

age weekly wage in covered employment determined by the Michigan employment security commission for the year ending September 30, 1967, shall be the base on which such adjustments are made.

"The first adjustment, if any, shall be made on January 1, 1969, and shall reflect the change, if any, between the average weekly wage for September 30, 1968, and the average weekly wage for September 30, 1967, and the adjustments shall be made in like manner on each January 1 thereafter, utilizing the average weekly wage for the preceding September 30.

"Adjustment for the statutory *maximum rate* shall be made only if there has been an increase or decrease in the average weekly wage of at least $1.50 during the preceding year, applied to the September 30, 1967, base and the director shall announce the adjustment each December 1, to become effective the following January 1. If in any year the change is less than $1.50, the director of the department shall recommend no change for the following year but the amount of change in such year shall be carried forward and added to or subtracted from subsequent annual determinations until the total change shall be at least $1.50, in which year an adjustment shall be made. There shall be an adjustment made of $1.00 in the *maximum rates* for each $1.50 increase or decrease in the average weekly wage. The *maximum weekly rate* as so determined for the year in which the date of injury occurred shall remain fixed without further change as to the personal injury occurring within such year." (Emphasis added.)

The same ambiguity which plaintiff asserts now exists in § 351 had its genesis, therefore, in the 1965 act.

The 1965 act *expressly* provided upward adjustments for the years September 1, 1965-October 31, 1966; September 1, 1966-October 31, 1967; September 1, 1967 to December 31, 1968, but only for the maximum rates. It is indisputable that the act precluded any adjustment in minimum rates prior to 1969 and it follows therefore that the Legisla-

ture intended the minimum rates to remain unchanged for at least three years while the maximum rates were to be self-adjusted during that same period.

While it is true that there is language in the 1965 act, following the establishment of the flat minimum rates, making those rates subject to the provisions of subsection (f), at the time the act became effective (September 1, 1965) that language could have no effect since subsection (f), by its own terms, was inoperative, insofar as rate adjustment was concerned, until 1969. The "except as provided in subsection (f)" language following the statement of the maximum rates was similarly inoperative until January 1969. It was only in January 1969, that subsection (f) would become operative and then to carry on the adjustment progression for the *maximum* benefit rates only, as first begun by the Legislature's establishment in September, 1965, of annually increasing maximum rates.

We can see no reason why the Legislature would have unambiguously mandated that minimum compensation rates for all dependency classifications would remain unchanged for the years September 1965 to January 1969 and intend that subsection (f) should suddenly spring into action to adjust those minimum rates for all subsequent years. It would seem reasonable that if the Legislature intended annual adjustments to be made to the minimum rates through subsection (f), it would have made express adjustments for the years September 1965 to January 1969, just as it did for the maximum rates, and then provide for subsection (f) adjustments to carry on the automatic adjustment process for subsequent years. The Legislature's failure to make provision for adjusting the minimum rates from September 1965 to January

1969 is strong indication that there was no inten-
tion that subsection (f) have such effect after Janu-
ary of 1969. We are fortified in this view by the
Legislature's failure to make any reference in
subsection (f) to minimum compensation rates
while, at the same time, making reference to
maximum rates four times.

The basic provisions of MCL 412.9; MSA 17.159
have remained intact although that section has
now been repealed and subsections (a) and (f)
replaced by §§ 351 and 355 respectively,[4] to the
result that what has been said heretofore applies
with equal or greater force since the Legislature
has reconsidered and re-enacted essentially the
same legislative scheme.

## III

Our conviction that the Legislature never in-
tended to adjust minimum rates rests not only on
our judgment of legislative intent derived from the
particular method utilized to free the Legislature
from periodic express rate adjustments as embod-
ied in MCL 412.9, subsections (a) and (f); MSA
17.159, subsections (a) and (f), but also on the
precise language of present §§ 351 and 355 and the
effect those provisions would have if given the
plaintiff's interpretation.

As noted, the plain language of § 355 makes no
reference to minimum rates. While there is no
statutory definition of "maximum weekly rates" as
used in that section, it would be unreasonable to

---

[4] In 1980, pursuant to 1980 PA 357 to be effective January 1, 1982,
the Legislature once again modified §§ 351 and 355. As amended these
sections, as well as the addition of MCL 418.356; MSA 17.237(356),
make it unmistakably clear that § 351 will contain no minimum
benefit for total disability.

conclude that "maximum rates" refers to anything more than the ceiling rates ("not more than") established in § 351 to which § 355 is cross-referenced. While such a reading would render the "except as provided in section 355" language following the minimum rates nugatory, it does not destroy any substantive provision in the act. It merely renders the cross-reference surplusage and of no more or less significance than that reference had when the provision was first enacted in 1965. To give § 351 the interpretation given it by *Jolliff* and advocated by the plaintiff would require that we write into the statute a substantive amendment; a legislative function we decline to undertake as it amounts to an unconstitutional usurpation of the powers of a co-equal branch of our government.

Further indication that the Legislature never intended that minimum rates be adjusted are the internal conflicts, unfairness and absurd results which such an interpretation would permit.

It must be remembered that in assessing legislative intent the act is to be construed as a whole and its provisions are to be construed so as to harmonize rather than conflict with one another. *Gerlesits v Lakey Foundry & Machine Co,* 319 Mich 229; 29 NW2d 856 (1947); *Kasarewski v Hupp Motor Car Corp,* 315 Mich 225; 23 NW2d 689 (1946).

### A

MCL 418.321; MSA 17.237(321), formerly MCL 412.5; MSA 17.155, establishes death benefits for the dependents of an employee "wholly dependent upon [the deceased's] earnings for support at the time of the injury". The maximum and minimum compensation rates are virtually identical to those

provided for disabled persons by § 351.[5] However, the *only* reference in § 321 to § 355 is with respect to the language establishing the maximum rates. There is no language referring to the § 355 adjustment provision following the minimum rate schedule.

We can find no plausible reason why the Legislature would intend to adjust upward the minimum compensation rate for a totally disabled person and his dependents as the plaintiff claims while, at the same time, unambiguously not doing so for the surviving dependents of an employee killed during the course of employment.

## B

Adjustment of the minimum compensation rates for disabled employees would also impair the effectiveness of MCL 418.357; MSA 17.237(357), which mandates an annual 5% reduction in benefits for each year after the age of 65 to a minimum of 50% of the benefits paid at age 65.[6] An example best demonstrates the manner in which that impairment would occur.

For the calendar year 1981, the adjusted maximum for a totally disabled worker with no dependents is $181 per week. The corresponding mini-

[5] Because the death of the employee without dependents would terminate the payment of benefits, § 321 establishes a benefit schedule which begins with one dependent as opposed to no dependents under § 351.

[6] MCL 418.357 states:

"(1) When an employee who is receiving weekly payments or is entitled to weekly payments reaches or has reached or passed the age of 65, the weekly payments for each year following his sixty-fifth birthday shall be reduced by 5% of the weekly payment paid or payable at age 65, but not to less than 50% of the weekly benefit paid or payable at age 65, so that on his seventy-fifth birthday the weekly payments shall have been reduced by 50%; after which there shall not be a further reduction for the duration of the employee's life. Weekly payments shall *not* be reduced below the minimum weekly benefit as provided in this act."

mum rate, if adjusted, is $144. If, because of adjustment of minimum rates, benefits cannot be reduced below $144 as an employee moves beyond age 65, then the maximum reduction could only be $37 or 20% of the $181 received at age 65 rather than the 50% maximum reduction which § 357 requires be accomplished by age 75.

At the time the reduction provisions of § 357 first appeared in the act,[7] the mathematical reality was that the maximum weekly rate of $58 for an injured employee with no dependents could be reduced by 50% pursuant to the above provision down to a weekly rate of $28 which would still be in excess of the then-prescribed minimum of $27. It appears evident that in 1965, when the Legislature first provided for an annual 5% reduction in benefits between the ages of 66 and 75 it had taken into consideration the minimum rates established and had ensured compatibility between the § 357 50% reduction provision and the difference between maximum and minimum rates. To adjust minimum rates as plaintiff suggests would make it impossible for the legislatively mandated 50% reduction to be effective.[8] Adjustment of the minimum rates would render a substantive provision in the act meaningless and would violate a fundamental canon of statutory construction:

---

[7] These provisions first appeared pursuant to 1965 PA 44, formerly codified at MCL 412.9(g); MSA 17.159(g).

[8] This ineffectiveness of the 50% reduction requirement would obtain as long as average weekly wage rates in the state remain at or above those of 1970. Only the first adjustment to the minimum rates in 1969 would have done no violence to the 50% reduction provision of § 357.

The chart for weekly compensation rates adjusted both as to maximum and minimum rates and as available from the office of the Director of the Bureau of Workers' Disability Compensation looks like this:

" 'It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.' A statute should be construed so that effect be given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant and so that one section will not destroy another unless the provision is the result of obvious mistake or error." 2A Sutherland, Statutory Construction (4th ed), § 46.06, p 63.

We cannot attribute to the Legislature an intent to destroy the act's internal compatibility by ascribing to it an unexpressed intention that the minimum compensation rates of § 351 be adjusted.

## C

Still further indication that the Legislature did

| Number of Dependents | From 1-1-69 to 12-31-69 | | From 1-1-70 to 12-31-70 | | From 1-1-71 to 12-31-71 | | From 1-1-72 to 12-31-72 | | From 1-1-73 to 12-31-73 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Min. | Max. | Min. | Max. | Min. | Max. | Min. | Max. | Min. | Max. |
| 0 | $32 | $69 | $38 | $75 | $42 | $79 | $47 | $84 | $57 | $94 |
| 1 | 35 | 74 | 41 | 80 | 45 | 84 | 50 | 89 | 60 | 99 |
| 2 | 38 | 80 | 44 | 86 | 48 | 90 | 53 | 95 | 63 | 105 |
| 3 | 41 | 86 | 47 | 92 | 51 | 96 | 56 | 101 | 66 | 111 |
| 4 | 44 | 92 | 50 | 98 | 54 | 102 | 59 | 107 | 69 | 117 |
| 5 or more | 47 | 98 | 53 | 104 | 57 | 108 | 62 | 113 | 72 | 123 |

| Number of Dependents | From 1-1-74 to 12-31-74 | | From 1-1-75 to 12-31-75 | | From 1-1-76 to 12-31-76 | | From 1-1-77 to 12-31-77 | | From 1-1-78 to 12-31-78 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Min. | Max. | Min. | Max. | Min. | Max. | Min. | Max | Min. | Max. |
| 0 | $64 | $101 | $70 | $107 | $78 | $115 | $90 | $127 | $105 | $142 |
| 1 | 67 | 106 | 73 | 112 | 81 | 120 | 93 | 132 | 108 | 147 |
| 2 | 70 | 112 | 76 | 118 | 84 | 126 | 96 | 138 | 111 | 153 |
| 3 | 73 | 118 | 79 | 124 | 87 | 132 | 99 | 144 | 114 | 159 |
| 4 | 76 | 124 | 82 | 130 | 90 | 138 | 102 | 150 | 117 | 165 |
| 5 or more | 79 | 130 | 85 | 136 | 93 | 144 | 105 | 156 | 120 | 171 |

| Number of Dependents | From 1-1-79 to 12-31-79 | | From 1-1-80 to 12-31-80 | | From 1-1-81 to 12-31-81 | |
|---|---|---|---|---|---|---|
| | Min. | Max. | Min. | Max. | Min. | Max. |
| 0 | $119 | $156 | $134 | $171 | $144 | $181 |
| 1 | 122 | 161 | 137 | 176 | 147 | 186 |
| 2 | 125 | 167 | 140 | 182 | 150 | 192 |
| 3 | 128 | 173 | 143 | 188 | 153 | 198 |
| 4 | 131 | 179 | 146 | 194 | 156 | 204 |
| 5 or more | 134 | 185 | 149 | 200 | 159 | 210 |

not intend that minimum rates be adjusted is the unlikelihood that it intended to maintain an arbitrary $37 difference between maximum and minimum rates.[9] That is the effect of matching each dollar adjustment in the maximum rate with an equal adjustment in the minimum rate. All such a scheme does is perpetuate a narrow range within which the two-thirds average weekly wage calculation must fall to be effective.[10] The primary two-thirds calculation loses much of its force if minimum rates are adjusted, since the adjustment would mandate a $37 window within which *all* disabled wage earners would be compensated.

It should be pointed out that the maintenance of an arbitrary constant difference in minimum and maximum benefit rates leads to considerable distortion in the percentage changes of the respective rates. If both rates are adjusted upward, the ratio of minimum rates to maximum rates becomes increasingly larger. If both rates were adjusted upward indefinitely, the ratio would approach 1 and the $37 difference would have little, if any, practical meaning.

Also, a comparison of the percentage increase of adjusted minimums and adjusted maximums from the rates effective September 1, 1967 to January 1, 1981 reveals that if adjusted, minimums would have risen from $27 to $144 or 433%, while maximums have risen from $64 to $181, or only 183%.

Certainly from the face of the act we can discern no rational reason why the Legislature would promote a scheme which, in comparative terms,

[9] The $37 difference applies to the no-dependents classification. The difference is constant in all other dependent classifications but varies from $39 to $51. See chart in fn 8.

[10] It is clear that the two-thirds calculation is the primary rate-setting formula. Even the adjustment provisions of § 355 adhere to the 2/3 average weekly wage approach, mandating a $1.00 adjustment for each $1.50 change in the average weekly wage.

would boost the minimum benefit rates at such a dramatically accelerated pace.

Moreover, if minimum rates are adjusted, over time, all disabled workers would eventually be compensated at precisely the same rate.[11] Such a result hardly comports with the declared policy of the Worker's Disability Compensation Act to compensate workers for their loss of wage-earning

---

[11] The accompanying graph best illustrates the overall "levelling" effect of adjusting minimum benefit rates.

The horizontal axis represents the passage of time. The vertical axis represents an increase in dollar amounts. We take notice that, given a growing and inflationary economy, as time passes wages increase and therefore any adjustment pursuant to § 355 will be upward. Plaintiff's assertion that the minimum rates ought to be adjusted would result in a graph in which the distance between the line representing adjusted maximum rates would remain at a constant distance from that representing the adjusted minimums. While the amount of adjustment need not necessarily remain constant from year to year, and in reality has not, for ease of illustration we will assume it has. Hence, the slope of the lines representing the adjusted levels is constant and the lines are straight.

Assume an injury occurred to each of three individuals at exactly the same time—point A. Assume also that X was earning so much in excess of the adjusted maximum rate that 2/3 of his average weekly wage (AWW) still fell at a point well above the adjusted maximum rate—here point X. His actual recovery would be at the maximum adjusted rate each year until he reached the level representing two-thirds of AWW. At that time he would collect benefits at that level (see *Wemmer v National Broach & Machine Co [After Remand]*, 89 Mich App 312; 280 NW2d 845 [1979]) presumably until that time when the adjusted minimum rate would equal two-thirds AWW. From that point on, if minimums are to be adjusted, he would collect at the increasing minimum level. If minimums were not adjusted, X would continue collecting benefits only at the rate of two-thirds AWW.

In a similar fashion, Y, whose wages were such that two-thirds AWW fell below the maximum adjusted level, would continue to collect at his two-thirds level until the minimum adjusted level would equal two-thirds AWW. Again, depending on whether the minimums are adjusted, Y's benefit rate would either increase accordingly or stay at the two-thirds AWW level.

Finally, Z, whose wage is so low that two-thirds AWW leaves him below any minimum level, will begin collecting and continue to collect either at the unadjusted minimum level or at the minimum adjusted level.

The result, if minimums are adjusted, is obvious. At point B, all three wage earners, despite the disparity in wages at the time of injury, would be receiving the same compensation. On the other hand,

capacity, MCL 418.371(1); MSA 17.237(371)(1), unless we adopt the wholly unwarranted fiction that all workers in a free society have the same wage-earning capacity. We decline to follow that course and do not attribute such a philosophy to our Legislature. Rather, we conclude that the Legislature, aware of the economic realities in this state, assumed that the upward pressures on wages would assure that a two-thirds multiplier would continue to upwardly adjust the benefit rates for those individuals on the lower ends of the economic ladder. In addition, we believe it is evident

if minimum rates are unadjusted, the difference in wage-earning capacity is reflected in the benefits each wage earner receives.

X - - - -

Y . . . .

Z . . . . . . . .

that the Legislature, in providing for annual adjustments to maximum rates only, intended some parity between the prescribed two-thirds of average weekly wages and maximum compensation benefits in an economy which is generally expanding.

Although our holding is based on what we perceive to have been the intent of the Legislature at the time of enactment of the provisions discussed, in practical effect, given the contrary interpretations of the law by the Director of the Bureau of Workers' Compensation and the bureau's subdivisions, the Workers' Compensation Appeal Board and its hearing referees, and the Court of Appeals, today's holding is not unlike the announcement of a new rule of law. Its application therefore should be treated accordingly. See *Whetro v Awkerman,* 383 Mich 235; 174 NW2d 783 (1970); *Parker v Port Huron Hospital,* 361 Mich 1; 105 NW2d 1 (1960); *Bricker v Green,* 313 Mich 218; 21 NW2d 105 (1946).

In the interest of fairness we do not believe our holding should affect any disability compensation payments already made. Consequently, no recipient will be obligated to repay sums already received by reason of the erroneous computation formula we have nullified today. However, any benefits due and not yet paid or to be awarded after the date of this opinion shall be in accord with this ruling.

Accordingly, *Jolliff* is overruled, the Court of Appeals is reversed, and the cause is remanded for recomputation of benefits in conformance with this opinion.

COLEMAN, C.J., and KAVANAGH, LEVIN, and FITZGERALD, JJ., concurred with RYAN, J.

WILLIAMS, J. This case involves an interpretation of the relation between §§ 351 and 355 of the Worker's Disability Compensation Act (WDCA). MCL 418.351, 418.355; MSA 17.237(351), 17.237(355). Particularly, the question is whether the identical reference "except as provided in section 355" appearing in § 351 after both "not more than $64.00 * * *" and "not less than $27.00 * * *" means that both maximum and minimum categories shall be increased "as provided in section 355".

The question arises because § 355 commences, "The maximum weekly rate in each dependency classification in this act shall be adjusted once each year". Although the administrators of the WDCA and the Court of Appeals have invariably interpreted the act to mean there is escalation in both maximum and minimum categories, defendants in this case claim the escalation of minimum benefits is not legislatively intended.

We hold that the phrase, "except as provided in section 355" activates weekly benefit increases for both the "not more than" and the "not less than" classifications for the following reasons. First, the Legislature placed the "except as provided in section 355" provision after both the "not more than" and the "not less than" classifications for a purpose. Unless both classifications are subject to the same escalation, then as to the classification not increased the legislative use of "except as provided in section 355" accomplishes nothing. It will not be presumed that the Legislature used words without a purpose. Second, "[s]tatutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injus-

tice".[1] Third, legislative history shows that the language in §§ 351 and 355 is a particular change from the former language in MCL 412.9(a); MSA 17.159(a) which provided escalation exclusively for the upper limits. Fourth, the invariant interpretation of §§ 351 and 355 since 1969 by the Bureau of Workers' Compensation has been to escalate across the board. The Court of Appeals is affirmed.

## I. FACTS

On March 25, 1977, plaintiff Karen Gusler injured her back in the course of her employment with defendant Fairview Tubular Products (Fairview). At that time, plaintiff was earning the minimum wage with no fringe benefits. Deductions for federal and state taxes and Social Security reduced her weekly gross pay of $96 to $77.62.

Following plaintiff's injury, defendant Fairview and its insurer, defendant Farm Bureau Insurance Group (Farm Bureau), voluntarily paid workers' compensation benefits of $64 per week, two-thirds of plaintiff's average weekly wages. Based upon these facts, stipulated to by the parties, plaintiff thereafter petitioned the Bureau of Workers' Disability Compensation for a determination of the correct weekly benefit rate. On June 5, 1978, an administrative law judge increased the weekly benefit to $96, the minimum rate for an employee injured during 1977 with two dependents.

The unanimous Workers' Compensation Appeal Board, like the hearing referee, relied upon *Jolliff v American Advertising Distributors, Inc,* 49 Mich App 1; 211 NW2d 260 (1973), *lv den* 391 Mich 780 (1974), in affirming the augmented award on De-

---

[1] 2 Sutherland, Statutory Construction (2d ed), § 490, p 913, quoted in *Boyer-Campbell Co v Fry,* 271 Mich 282, 297; 260 NW 165 (1935).

cember 27, 1978. The Court of Appeals affirmed by per curiam opinion.[2]

Leave to appeal was granted on November 20, 1979. 407 Mich 926 (1979). The parties were instructed to address the following issue:

"Whether the cost-of-living increases in workers' disability compensation benefits, provided for in MCL 418.355; MSA 17.237(355), apply to the *minimum* as well as the maximum weekly rates for total disability, as set forth in MCL 418.351; MSA 17.237(351)."

Oral argument was conducted on May 6, 1980.

## II. STATUTORY LANGUAGE INVOLVED

Two sections of the WDCA are involved in the instant case. The first establishes dependency classifications, setting compensation rates within each classification as follows:

"While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of *2/3 of his average weekly wages, but not more than $64.00, if such injured employee has no dependents;* $69.00 if 1 dependent; $75.00 if 2 dependents; $81.00 if 3 dependents; $87.00 if 4 dependents; and $93.00 if 5 or more dependents; *except as provided in section 355.* Compensation shall be paid for the duration of the disability. *Weekly payments shall not be less than $27.00 if there are no dependents;* $30.00 if 1 dependent; $33.00 if 2 dependents; $36.00 if 3 dependents; $39.00 if 4 dependents; and $42.00 if 5 or more dependents; *except as provided in section 355.* Compensation shall be paid for the duration of the disability. The conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury and thereafter the question of

[2] 92 Mich App 164; 284 NW2d 487 (1979).

permanent and total disability shall be determined in accordance with the fact as the fact may be at that time." MCL 418.351; MSA 17.237(351). (Emphasis supplied.)

The second provision before us sets forth an adjustment mechanism for benefit rates on an annual basis as follows:

"(1) *The maximum weekly rate in each dependency classification in this act shall be adjusted once each year* in accordance with the increase or decrease in the average weekly wage in covered employment, as determined by the employment security commission. The average weekly wage in covered employment determined by the employment security commission for the year ending June 30, 1967, shall be the base on which such adjustments are made.

"(2) A second adjustment, if any, shall be made on January 1, 1970 and shall reflect the change, if any, between the average weekly wage for June 30, 1969 and the average weekly wage for June 30, 1968 and the adjustment shall be made in like manner on each January 1 thereafter, utilizing the average weekly wage for the preceding June 30.

"(3) Adjustment for the statutory maximum rate shall be made only if there has been an increase or decrease in the average weekly wage of at least $1.50 during the preceding year, applied to the June 30, 1967, base and the director shall announce the adjustment each December 1, to become effective the following January 1. If any year the change is less than $1.50, the director shall announce no change for the following year but the amount of change in such year shall be carried forward and added to or subtracted from subsequent annual determinations until the total change shall be at least $1.50, in which year an adjustment shall be made. There shall be an adjustment made of $1.00 in the maximum rates for each $1.50 increase or decrease in the average weekly wage. The maximum weekly rate as so determined for the year in which the date of injury occurred shall remain fixed without

further change as to the personal injury occurring within such year." MCL 418.355; MSA 17.237(355). (Emphasis supplied.)

### III. DISCUSSION

In each year succeeding 1969, the effective date of the present MCL 418.355, the Director of the Bureau of Workers' Disability Compensation increased both maximum and minimum rates. However, the facial conflict between the cited provisions did not receive judicial attention until the 1973 decision of the Court of Appeals in *Jolliff* which approved the administrative interpretation, escalating in all categories.

In the case at bar, increases in the minimum weekly rate for employees with two dependents resulted in plaintiff's receipt of compensation benefits equalling her gross pay at the time of the injury. Defendants argue strenuously that the Legislature never contemplated such a windfall to injured employees.

We begin our analysis by turning to the precise issue framed by our grant of leave to appeal: "Whether the cost-of-living increases in workers' disability compensation benefits, provided for in MCL 418.355; MSA 17.237(355), apply to the *minimum* as well as the maximum weekly rates for total disability, as set forth in MCL 418.351; MSA 17.237(351)."

### A

Defendants conclude that the clear language of modification in MCL 418.351, "except as provided in section 355", must be nugatory because it leads to facial conflict with the latter section. However, the first principle guiding our interpretive process was restated in 2A Sutherland, Statutory Construction (4th ed), § 46.06, p 63:

" 'It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.' A statute should be construed so that effect be given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error."

In cases of statutory interpretation, we are bound to determine legislative intent. It does not impress us that the Legislature inadvertently or deliberately inserted language in MCL 418.351 which becomes meaningless on reference to MCL 418.355.

If MCL 418.355 was intended by the Legislature to be applied to each dependency classification, as is apparently the case from the referential language of MCL 418.351, our task under the first guiding principle of statutory construction is complete. Each word in these two provisions is given effect by such a reading.

## B

However, our inquiry does not end at this point. The second principle to be applied to our analysis is found in 2 Sutherland, Statutory Construction (2d ed), § 490, p 913:

"Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience and to oppose all prejudice to public interests." Quoted in *Boyer-Campbell Co v Fry,* 271 Mich 282, 297; 260 NW 165 (1935).

This is essentially a call for the same sort of weighing of humanitarian purposes and beneficent objectives which has characterized this Court's

construction of the WDCA since its inception. *Sheppard v Michigan National Bank,* 348 Mich 577, 589; 83 NW2d 614 (1957) (opinion of Smith, J.). Applying this second principle, we are persuaded that § 355 represents the Legislature's attempt to provide some relief from the pervasive inflation which has particularly afflicted our state over the past 20 years.

The goal of the WDCA is to provide in an efficient and dignified form certain financial and medical benefits for employees who suffer injuries at the workplace. The victims of such injuries are assured of a certain recovery of benefits, regardless of fault, in lieu of the nebulous prospect of a tort recovery against the employer.

As applied to plaintiff, an employee working at the minimum wage, this goal of efficient and dignified support is translated into weekly benefits for plaintiff and her two children of, at most, $96. This sum is determined for her at the time of her injury, and remains static for her unless she should meet the stringent requirements of "total and permanent disability", MCL 418.361(2); MSA 17.237(361)(2). Even the *Jolliff* incremental benefits have brought plaintiff only to parity with her gross wages at the time of her injury. Although both the minimum wage and the cost of living can be expected to rise in succeeding years, plaintiff's benefits have been frozen until she regains her health. Since the minimum hourly wage today is $3.10, her earnings for a 40-hour week would be $124. Consequently, her $96 a week benefits would not encourage her to malinger.

C

Material assistance in construing these statutes is provided by an examination of the historical

transmutations of the present § 351, formerly MCL 412.9; MSA 17.159.[3]

Until 1949, the formula for setting compensation benefits was circumscribed by a maximum rate of $21 and a minimum rate of $10 per week, without regard to the number of dependents. 1948 CL 412.9, amended by 1949 PA 238 to establish new minimum and maximum rates based on the number of the claimant's dependents. By 1952 PA 263, six dependency classifications were established, and the rates for both minimum and maximum benefits were increased. Similar increases for maximum and minimum rates were implemented by 1954 PA 175 and 1956 PA 195. Clearly, then, the Legislature during that period was concerned with providing additional protection for the minimum-wage earner.

This concern was again manifested in 1965, when minimum rates were increased by 50% across the board. However, 1965 PA 44 amended MCL 412.9 by adding annually augmented rates only for those already receiving maximum benefits. By removing

---

[3] "(a) While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of 66-2/3% of his average weekly wages, but not more than $58.00 as of September 1, 1965, $61.00 as of September 1, 1966 and $64.00 as of September 1, 1967 if such injured employee has no dependents; $63.00 as of September 1, 1965, $66.00 as of September 1, 1966 and $69.00 as of September 1, 1967 if 1 dependent; $70.00 as of September 1, 1965, $72.00 as of September 1, 1966 and $75.00 as of September 1, 1967 if 2 dependents; $77.00 as of September 1, 1965, $79.00 as of September 1, 1966 and $81.00 as of September 1, 1967 if 3 dependents; $84.00 as of September 1, 1965, $86.00 as of September 1, 1966 and $87.00 as of September 1, 1967 if 4 dependents and $91.00 as of September 1, 1965, $92.00 as of September 1, 1966 and $93.00 as of September 1, 1967 if 5 or more dependents, except as provided in subsection (f). Compensation shall be paid for the duration of the disability. Weekly payments shall in no event be less than $27.00 if there are no dependents; $30.00 if 1 dependent; $33.00 if 2 dependents; $36.00 if 3 dependents; $39.00 if 4 dependents; and $42.00 if 5 or more dependents; except as provided in subsection (f). Compensation shall be paid for the duration of the disability." 1965 PA 44.

the language limiting increased benefits to the maximum rates, as it did by 1969 PA 317, the Legislature provided a clear signal of its intent to allow uniform cost-of-living increments. As the Court of Appeals noted in *Keyzer v Christian Rest Home,* 32 Mich App 286, 288; 188 NW2d 672 (1971):

"Had the Legislature desired to effect the interpretation now placed upon the act by defendant, it could easily have done so in simple language. It is not for this Court to add language to a clear and explicit statute."

The replacement for repealed MCL 412.9, MCL 418.351, explicitly provided cost-of-living adjustments for both maximum and minimum rates through reference to the new MCL 418.355. We would indeed be arrogating to ourselves the legislative power if we were now to read into § 351 the precise limitations which the Legislature found objectionable and inimical to the spirit of the WDCA over 11 years ago.

## D

There remains one additional principle to be employed in settling the meaning of the escalator clause. This was early described by the United States Supreme Court in *United States v Moore,* 95 US 760, 763; 24 L Ed 588 (1877), as follows:

"The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons."

Defendants concede that the invariant interpretation of the instant WDCA provisions since 1969 is against them. In that year, the Director of the Bureau of Workers' Compensation first announced increases for both minimum and maximum rates,

following the Legislature's deletion of the limitational language in § 351. Without exception, the administrative law judges of the bureau, the Workers' Compensation Appeal Board, and the Court of Appeals have found the escalator clause applicable across the board. We acknowledged in *Magreta v Ambassador Steel Co,* 380 Mich 513, 519; 158 NW2d 473 (1968), the deference owed to the Bureau of Workers' Disability Compensation interpretation of the WDCA. It is fully in keeping with our *Magreta* holding that we now give appropriate weight to the longstanding construction given these provisions by the agency legislatively designated to administer them.

*Magreta* also speaks to the subject of legislative acquiescence. The Legislature's silence after the Court of Appeals issued its interpretation of certain statutory language "can only be construed as consent to the accuracy of that interpretation". See *In re Clayton Estate,* 343 Mich 101, 106-107; 72 NW2d 1 (1955). As *Magreta* notes, 380 Mich 520:

"We would not be understood to hold that standing alone this principle [of legislative acquiescence] is controlling, yet we must assume that the Legislature was aware of the prior interpretation of the act. Session after session the act has been amended in some particular, but no specific amendment of the language here under consideration was made."

The Legislature has not spoken to the issue presented in this case since it removed language limiting cost-of-living increases to the maximum rates from MCL 418.351 in 1969.[4] While such

---

[4] Although presented with the opportunity to do so when it reenacted § 351 with certain additions in 1976 PA 393, the Legislature made no modifications in the pertinent language.

silence, standing alone, may not be controlling, it is combined with an invariant interpretation by the agency charged with administration of the WDCA. These factors, and the clear indications of legislative intent disclosed by the first two guiding principles, provide overwhelming evidence that the cost-of-living adjustments of MCL 418.355 are to apply uniformly to all dependency classifications.

## The Percentage-of-Wage Limitation

The parties and amici briefed the issue whether, if *Jolliff* applies to minimum rates, an employer can be required to pay workers' compensation benefits in excess of the statutory two-thirds of the employee's average weekly wage. This issue is not squarely presented by the instant facts, since plaintiff is receiving exactly the same amount she would have earned working full time in 1977. However, we would be remiss if we did not now confront the issue defendants have raised.

This Court has never adhered to the notion that wage-loss substitution is the sole purpose of the WDCA. As early as 1932, we sustained an award of $7 per week to an injured volunteer fire chief whose annual salary was $25 per year. *Carothers v City of Stanton,* 257 Mich 107; 241 NW 178 (1932). Similarly, in *King v Second Injury Fund,* 382 Mich 480; 170 NW2d 1 (1969), we held the two-thirds average weekly wage limitation inapplicable to differential payments by the Second Injury Fund to totally and permanently disabled employees. We subsequently denied leave to appeal in *Keyzer v Christian Rest Home,* which held that a part-time employee with an average weekly wage of $30.40 was entitled to benefit payments of $27 and that the percentage weekly wage provision was modified by the specific minimum provision. The two-thirds average weekly wage limitation was then

considered in two 1976 cases. In *Lahay v Hastings Lodge No 1965 BPOE,* 398 Mich 467; 247 NW2d 817 (1976), we had occasion to consider the limitation as it applied to an employee injured on a part-time job who suffered no impairment of earning capacity in his regular full-time employment. Defendants rely heavily upon *Lahay* as indicative of this Court's rejection of benefit payments in excess of the two-thirds average weekly wage limitation, but defendants misconstrue our holding in the case. The decision simply disallows inclusion of separate, unrelated contemporaneous employment unaffected by a disability when applying MCL 418.371(1); MSA 17.237(371)(1), limiting compensation payable to average weekly earnings at the time of injury plus wage-earning capacity after the injury. Under such circumstances, since he continued without limitation his principal full-time employment, we found it legitimate to compensate plaintiff based on two-thirds of his average weekly wage in the part-time employment. This benefit for disability in his part-time employment was an amount which was less than the minimum rate for full-time employment where he continued to receive his full wages. Following *Lahay,* the Workers' Compensation Appeal Board held unanimously that the decision had no applicability to the type of factual situation presented in the instant case. *Hiltz v Phil's Quality Market,* 1977 WCABO 3692.

We next confronted the two-thirds average weekly wage limitation in *Gasparick v H C Price Construction Co,* 398 Mich 483, 491; 247 NW2d 824 (1976). After setting forth an illustration in fn 4, we state:

"This example illustrates how the legislative policy expressed in the statute can operate to compel one employer to pay an employee more in compensation

than he would have paid in wages. This result, however, is understandable if one remembers that it is the legislative intent to compensate loss of earning *capacity,* not merely lost wages."

*Gasparick* effectively refutes the defendants' contentions that this Court has refused, since *Lahay,* to countenance workers' compensation benefit payments equal to or in excess of an employee's actual gross wages.

However, amici also point to the language in *Higgins v Monroe Evening News,* 404 Mich 1, 15; 272 NW2d 537 (1978):

"The statutory provisions dealing with computation of compensation use a sliding scale based upon weekly wage loss with minimum and maximum rates, the maximum rates to be adjusted on an annual basis. MCL 418.351; MSA 17.237(351) and MCL 418.355; MSA 17.237(355)."

*Higgins* involved a determination of compensability for injuries suffered by the assistant to a substitute newspaper carrier, and turned on the absence of an employment contract. It did not involve construction of § 351. Furthermore, the language quoted above does not purport to interpret the relationship between §§ 351 and 355. It is only a passing reference using an inexact and elliptical paraphrase of these two sections.

The most recent case to treat the two-thirds average weekly wage limitation is *Wemmer v National Broach & Machine Co (After Remand),* 89 Mich App 312; 280 NW2d 845 (1979), *lv den* 406 Mich 1002 (1979). *Wemmer* contains an interesting discussion of one of the WDCA provisions which the defendants have cited as an indication of legislative intent to limit benefit payments, MCL 418.357; MSA 17.237(357). Section 357 mandates

an annual 5% reduction in benefits being received by injured workers after age 65, until the total benefits received are reduced by 50%. Contrary to the proposition for which defendants have cited it, § 357 explicitly states in pertinent part: "Weekly payments *shall not be reduced below the minimum* weekly benefit as provided in this act". (Emphasis added.) *Wemmer* notes that whenever minimum weekly benefits are increased by the Director of the Bureau of Workers' Disability Compensation, those augmented amounts prevail where they exceed the two-thirds limitation. *Stein v Director, Bureau of Workmen's Compensation,* 77 Mich App 169; 258 NW2d 179 (1977). *Wemmer* concludes, 89 Mich App 329, "When the minimum rates exceed the two-thirds limitation, the minimums become the floor beneath which total payments may not fall."

From this litany of cases, it is clear that the Court has found that the Legislature has not made the two-thirds average weekly wage limitation controlling in every instance.

Defendants protest that the present minimum rate for a person with no dependents, $134, exceeds the amount that individual would earn working a 40-hour week at the minimum wage, $124. Defendants assert that such a situation encourages fraud. Whatever defendants, this Court or any one else thinks about this situation, the adjustments, if any, must be undertaken by the Legislature.

## IV. CONCLUSION

Our task of resolving the facial conflict between MCL 418.351 and MCL 418.355 has been assisted by the principles of effectuation of each word of each statute, ascertainment of legislative intent

with a view to furthering the humanitarian objectives of the WDCA, and construction of the salient provisions by the Bureau of Workers' Disability Compensation, as well as by recognition that the Legislature has failed to act in this area since removing the restraints on cost-of-living increments for minimum weekly benefits in 1969.

Having employed these tools of analysis, we hold that there is no conflict between MCL 418.351 and MCL 418.355. The provisions of the latter statute awarding cost-of-living benefits apply to both minimum and maximum rates. We further find that where such increases would result in benefit payments exceeding two-thirds of the claimant's average weekly wage at the time of the injury, the average weekly wage limitation is superseded by the rate newly established for the claimant's dependency classification.

The Court of Appeals is affirmed.

No costs, a public question being involved.

Blair Moody, Jr., J., concurred with Williams, J.

Blair Moody, Jr., J. *(dissenting).* I respectfully dissent from the majority opinion. I concur in general with the reasoning in the opinion written by Justice Williams and therefore have affixed my signature. The following explains additional reasons for my decision.

To overrule a decade of established precedent and practice requires this Court to judicially erase a clear legislative command, to avoid segments of legislative history, and to usurp the legislative function.

In an attempt to succinctly recapitulate the salient features of the statutory provisions applica-

ble to this case, it is noted that § 351(1) requires payment to a totally incapacitated employee of "not more than * * * $75.00 if 2 dependents; * * * except as provided in section 355 * * * not less than * * * $33.00 if 2 dependents; * * * except as provided in section 355." Thus, the plain language of the statute subjected both ceiling and base classifications to the adjustment provisions of § 355.

At the time of the plaintiff's injury § 355 provided: "(1) The maximum weekly rate in each dependency classification in this act shall be adjusted once each year in accordance with the increase or decrease in the average weekly wage." This provision also asserted: "(3) Adjustment for the statutory maximum rate shall be made only if there has been an increase or decrease in the average weekly wage of at least $1.50 during the preceding year." Section 355 referred to "maximum rates" and "maximum weekly rate" in two other sentences.

### A

Several arguments are advanced to support the position of the defendants that no adjustment to the minimum rates prescribed in § 351 is authorized pursuant to § 355 because none was intended by the Legislature.

It is first urged that since the plain language of § 355 makes no specific reference to minimum rates, it would be unreasonable to conclude that "maximum rates" refers to anything more than ceiling rates established in § 351 to which § 355 is cross-referenced. Accordingly, it is posited that the cross-reference in § 351 following the base or minimum classifications is surplusage.

This very point was addressed by the WCAB in *Jolliff v American Advertising Distributors, Inc,* 49 Mich App 1; 211 NW2d 260 (1973), *lv den* 391 Mich 780 (1974). In that case, the board unanimously reasoned:

"Sec. 9 of Part II as it was known in 1965, and which is now known as § 355 ([MCL] 418.355) provides: 'The maximum weekly rate *in each dependency classification in this act shall be adjusted * * *'.* (Emphasis supplied.) I submit that the word maximum as used in this section refers to the top amount which is payable in each dependency classification within the act, and is not to be construed just to refer to the maximum rate which is payable when the employee's weekly wage may exceed the state's average weekly wage so that the maximum which he receives is the top amount payable each week under the act. If there be those who would disagree, I refer such skeptics to the plain language of § 9, Part II which at the time of the employee's injury in 1970 provided * * *." 1972 WCABO 575, 579.

Given the statutory language, the WCAB analysis is a reasonable interpretation of legislative intent. Clearly all 12 of the statutory rates of payment of compensation provided in § 351, which include both ceiling and base categories, constitute dependency classifications. Certainly the Legislature must have intended some purpose for the cross-reference clause which follows the "minimum" classifications listed in § 351. To judicially discard this cross-reference phrase would also necessitate an absolute avoidance of the explanatory clause in the very first sentence in § 355.

Both clauses were inserted and approved by the Legislature. When read together, the two provisions blend together to mean that the adjustments in § 355 would apply to all dependency classifications listed in § 351. The plain language of these

two sections, including all phrases and cross-references, strongly suggests a legislative command that should not be judicially erased. This is particularly true when the humanitarian and remedial aims of the act are promoted.

### B

It is claimed that the legislative history of these provisions reveals an error in the drafting of the statute. The original version of what is now § 355 was first introduced into the legislative tableau by 1965 PA 44, MCL 412.9(a); MSA 17.159(a). This act expressly provided upward adjustments for ceiling classification rates from September 1, 1965 to January 1, 1969. There were no specific adjustments made to the base classification rates covering this period.

However, both the ceiling and base rate classifications were subjected to the provisions of subsection (f), the antecedent of § 355. Under the provisions of the act, subsection (f) would become operative commencing January, 1969. It is urged that since the Legislature failed to make provision for adjusting the base classifications from September 1965 to January 1969, there was no intention, irrespective of the specific legislative mandate, to apply the automatic adjustment provision of subsection (f) to the minimum categories after January, 1969.

Reaching back further into legislative history, however, illuminates a different view. Prior to 1949, disability compensation payments were established at two-thirds of the average weekly wage. Payments could not exceed $21 nor fall below $10 per week. Pursuant to 1949 PA 238, dependency classifications were introduced and

*both* ceiling and base rates were raised. For instance, an employee with no dependents could be paid no more than $24 nor less than $11 per week, slight increases over the prior statutory maximum and minimum rates. In addition, specific amounts were established on a steadily increasing progression in all dependency classifications.

This pattern was maintained by 1952 PA 263. Upward adjustments in each dependency classification, including ceiling and base categories, were specifically enacted. As an example, an employee with no dependents could be paid not more than $28 nor less than $14. The Legislature apparently was reacting to the then-gradual increase in the average weekly wage of Michigan workers with accompanying inflation and accommodated the economic progression by a specific act that raised to some extent both the benefit ceiling and floor.

Following the same mold, 1954 PA 175 provided for additional increased payments in all dependency classifications. In 1956, the Legislature altered the pattern. Under 1956 PA 195 increases were extended to the ceiling rates, whereas base dependency classification rates were unchanged.

It was not until 1965 when, pursuant to 1965 PA 44, the Legislature once again increased all dependency classification payments. Apparently a need to increase minimum as well as maximum benefits was again recognized. Weekly payments for ceiling rates with no dependents were raised to not more than $58 as of September 1, 1965, nor less than $27. As previously related, the ceiling payments were adjusted upward from September 1, 1965 *seriatim* to January 1, 1969. The recently raised base rate remained steady until January 1, 1969. At that point, the provisions of subsection (f), the antecedent of § 355, pursuant to the plain lan-

guage of the act would automatically adjust both the ceiling and base rates.

Viewing a full recount of legislative history and in the face of a specific legislative command, one cannot readily conclude that the Legislature did not intend § 355 to apply to the base dependency classifications set forth in § 351. At one time the differential amount between the ceiling and the base payment was absolutely constant. There is a background of consistent increases to both ceiling and base classification payments on almost every legislative occasion. Furthermore, payment rates were consistently subject to legislative alteration to reflect necessary changes due to economic conditions.

There is also another noteworthy feature to legislative history. It is doubtful that the Legislature, in 1965, could anticipate what would be enacted in 1969. In the 1965 act, the Legislature utilized language to allow for automatic adjustments that would carry beyond 1969. In 1969, the Legislature revised the act and specifically retained the cross-reference clause in § 351 which applied to minimum rates. The Legislature endorsed its prior 1965 enactment.

If one were to accept as arguable the proposition that the Legislature in 1965 mistakenly applied subsection (f) to the base classification, it becomes doubly difficult to accept when the Legislature again applied the cross-reference clause to all classifications in the 1969 act. Section 355 having been applied twice to both categories of classification in § 351 lends strength to what was the intent of the Legislature.

C

Inconsistencies within the act lend little assis-

tance to ascertaining legislative intent. It is urged that comparing § 351 with the death benefit provision of MCL 418.321; MSA 17.237(321) indicates there is no plausible reason why the Legislature would intend to adjust the minimum rate upward in disability classifications, while not doing so for surviving dependents of an employee killed during the course of employment. However, the Legislature may have had a reason for treating death cases differently than cases involving a disabled worker. Furthermore, it is just as plausible to suggest that the Legislature made a mistake by leaving out of § 321 a cross-reference clause to § 355.

Also, it is argued that an adjustment of minimum compensation rates for disabled employees would impair the effectiveness of MCL 418.357; MSA 17.237(357), which requires an annual 5% reduction in benefits each year after the age of 65 for a period of 10 years to a minimum of 50% of the benefits paid at age 65. It is claimed that to adjust minimum rates upwards under § 355 would make the 50% reduction impossible to effect.

However, § 357 specifically provides in pertinent part:

"Weekly payments shall not be reduced below the minimum weekly benefit as provided in this act."

It may therefore be discerned that the Legislature compassionately recognized the potentially serious impact that cost of living increases have on the elderly. The reduction down to 50% of the benefits paid at age 65 was to be tempered so that in no event would the benefits fall below the adjusted minimum weekly benefits under § 355.

D

Finally, it is urged that, in view of arguably inequitable results, it is likely that the Legislature did not intend to apply increasing adjustments to minimum classification benefits. In one regard this assertion would be answered by raising unfair hypothetical results had the base rates remained at the same level over the years.

More succinctly, this assertion was anticipated and answered nearly a decade ago by WCAB member Michael Gillman. In his separate concurrence with the unanimous *Jolliff* decision, Gillman stated:

"The impact of this decision is not simply to increase plaintiff's weekly compensation 67 cents (from $37.33 to $38), but to impose upon the insurers and self-insureds of this state a new compensation liability not previously considered—annually increasing minimums as well as maximums.

"There are practical problems and inequities that spring immediately to mind for service industry employers and others who hire part-time help.

"Seeing these, it will be easy to criticize the decision of this board as producing an inequitable result. Let us here submit that it is not this board's decision but the act as amended in 1965 that establishes the law before us. Section 9, Part II ([§ ] 351) specifically makes separate provision for increase in maximums and in the minimum dependency classifications. This writer is satisfied that such was the intent of that Legislature and would refer those who quarrel with such finding to the makers of the law." 1972 WCABO 582.

It is for the Legislature to change its prior specific statutory commands in the Worker's Disability Compensation Act. This has been done. In 1980, by 1980 PA 357, the Legislature, reacting to a battered Michigan economy, once again revised § 351 and § 355 to be effective January 1, 1982.

I would affirm the Court of Appeals.